David B. CLARK, Appellant,

v.

Kathryn M. WHITEHEAD, Anita White-
head Roper, Earla Frances Whitehead,
Thomas O. Whitehead, Priscilla Ann
Nelson, Kathleen Whitehead, and Don-
ald E. Roper, Trustee, Appellees.

No. 01–91–00230–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 31, 1994.

Rehearing Denied May 12, 1994.

Robert G. Miller, Houston, for appellant.

Timothy J. Hogan, Houston, for appellees.

Before DUGGAN, O'CONNOR and
HEDGES, JJ.

## OPINION ON MOTION
## FOR REHEARING

HEDGES, Justice.

Appellant, David Clark, has filed a motion for rehearing urging this Court to reconsider the decision rendered on February 3, 1994. We overrule the motion for rehearing, but we withdraw our original opinion of February 3, 1994, and issue this opinion in its stead.

David Clark appeals from a judgment awarding appellees $76,445.13 for unpaid holdover rent and property taxes, together with prejudgment and postjudgment interest and attorney's fees. We affirm.

In 1979, David Clark (Clark) leased approximately 13 acres of unimproved property off West Hardy Road to American Pipe Threading (American Pipe). In addition to Clark's land, American Pipe occupied adjacent land owned by appellees (the Whitehead Property). The Whitehead Property is surrounded on three sides by Clark's property, and a portion of it faces West Hardy Road. Appellees were unaware of American Pipe's use of their property. During the term of its lease, American Pipe built three buildings on Clark's property and one building on the Whitehead Property. Clark acquired the assets of American Pipe in late 1982 or early 1983 and formed Clark Tubular Services, Inc. (Clark Tubular), operating on the improved property previously leased to American Pipe.

On January 15, 1984, Clark Tubular entered into a one-year lease with appellees covering the Whitehead Property. The lease provided, among other things, that rent in the amount of $1200 was payable monthly; that in the event Clark Tubular held over after the term of the lease, the holding over would be on a month-to-month basis at a rental rate of $1500 a month; and that Clark Tubular would insure the property and pay the property taxes that accrued during the term of the lease or any extension of the lease. Clark personally guaranteed the performance of the lessee.

Clark Tubular performed under the lease for the one-year term. In January 1985, after the term of the lease had expired, Clark Tubular sent appellees a check in the amount of $1482.97. The check included property taxes assessed for 1984 and included $1200 as rent. Kathryn Whitehead notified Clark that after January 15, 1985, rent increased under the holdover provision in the lease from $1200 to $1500, and she requested that the remaining $300 be paid. Clark Tubular paid the additional $300 and continued to pay $1500 in rent to appellees until March 1986.

Clark testified at trial that Clark Tubular ceased to occupy the Whitehead Property in March 1986, and that in a meeting during that month, he told Kathryn Whitehead that Clark Tubular would no longer use the Whitehead Property. Kathryn Whitehead testified that during that meeting, Clark told her that his business was not going well and that he might have to give up the lease. No written notice terminating the month-to-month tenancy was given by Clark Tubular to appellees in March 1986. On July 2, 1987, appellees received a letter from Clark Tubular's attorney denying use of the Whitehead Property and stating that the lease had lapsed.

Appellees contended at trial that Clark Tubular continued to use the Whitehead Property and to hold over under the lease without paying rent from March 1986 until June 22, 1990. Asked if and when Clark Tubular terminated its month-to-month tenancy with appellees, the jury found that Clark Tubular gave notice of its termination of the month-to-month tenancy on July 2, 1987. The jury also found that Clark Tubular did not cease to occupy the Whitehead Property as a holdover tenant until May 11, 1990.

### Point of error seven

■ In point of error seven, Clark complains that the trial court erred when it found Clark personally liable for the unpaid property taxes, interest, and attorney's fees under his guarantee of the 1984 lease. Clark signed the following guaranty agreement: "I personally guarantee the performance of Lessee."

Citing *Bockelmann v. Marynick,* 788 S.W.2d 569, 571 (Tex.1990), Clark argues that the holdover tenancy was a new tenancy, separate and distinct from the previous one-year tenancy. He contends that his guaran-

ty was coterminous only with the written one-year lease such that when the original term of the lease ended, so did his guaranty obligation. We disagree.

*Bockelmann* does not stand for the proposition that in every instance a holdover tenancy creates a new tenancy. That result was obtained in that case only because its lease specifically provided that if the tenant remained in possession beyond the term of the lease, a "new tenancy" would be created. 788 S.W.2d at 571. We have no such language in the Clark Tubular lease.

In the case before us, the holdover tenancy is an extension of the original lease term according to the provisions of the lease agreement. By guaranteeing the unconditional "performance of Lessee," Clark bound himself to guarantee all obligations of Clark Tubular, whether during the primary term of the lease or during any holdover period. We hold that the trial court did not err in finding Clark personally liable for rent, taxes, and insurance incurred during the holdover tenancy.

We overrule point of error seven.

**Points of error one through six**

In the remaining points of error, Clark contends that the evidence was legally and factually insufficient to support the jury's finding that Clark Tubular occupied the Whitehead Property as a holdover tenant until May 11, 1990.

 When reviewing a legal sufficiency challenge to the evidence, we consider only the evidence and inferences, viewed in their most favorable light, that tend to support the challenged jury finding, and disregard all contrary evidence and inferences. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Virani v. Syal,* 836 S.W.2d 749, 750 (Tex.App.—Houston [1st Dist.] 1992, no writ). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988).

 When reviewing the record for factual sufficiency, we examine all of the evidence. After having considered and weighed all the

evidence, we will set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Virani,* 836 S.W.2d at 750–51.

 In order to avoid continued liability under a holdover tenancy, a holdover tenant must not only give notice of termination, he must vacate the property. *Moskowitz v. Calloway,* 178 S.W.2d 878, 879 (Tex.Civ.App.—Texarkana 1944, writ ref'd). The jury found that Clark gave notice of termination on July 2, 1987, a finding he does not challenge. We interpret his attack on the jury finding of holdover tenancy until May 11, 1990 as a challenge to the legal and factual sufficiency of the evidence that he continued to occupy the property until that date. The evidence adduced at trial on that issue is summarized as follows:

Kathryn Whitehead testified at trial that she visited the Whitehead Property periodically after March 1986, and that Clark Tubular continued to use the property. Her testimony is summarized as follows:

(1) July 23, 1986: pipe and pipe racks were still on the Whitehead Property, and the Property was being used.

(2) January 9, 1988: two large trucks were on the Whitehead Property and material was still on the back lots.

(3) March 5, 1988: pipe racks and stacks of pipe were on the front lots of the Whitehead Property that had not been there the time before.

(4) October 30, 1988: pipe racks were still on the Whitehead Property; some large boxes were inside the building on the Property; and the back lots had been partially cleared.

(5) January 22, 1989: the front lots had been cleared, but trash piles were on the back lots.

(6) February 21, 1989: a large pipe loader, loaded with pipe, drove across the Whitehead Property to unload pipe at Clark Tubular and then drove back across the property.

(7) August 1989: a large pile of trash was on the Whitehead Property on the back lots.

(8) August 19, 1989: the trash was still on the back lots; a man was burning trash a few feet away; and a truck drove across the Whitehead Property.

(9) September 3, 1989: the large trash pile was still on the Property.

(10) May 11, 1990: a stream of cars drove across the Whitehead Property, and the shed on the Property had been newly painted.

James L. Hieronimus, a private investigator hired by appellees, testified that when he visited the Whitehead Property in October 1987, he saw a front-end pipe loader carrying pipe across the Whitehead Property and unloading the pipe onto racks located on the Property. William Roper, Mrs. Whitehead's nephew, testified that when he visited the Whitehead Property on September 17, 1987 and September 18, 1987, he observed pipe racks and men working on the Whitehead Property. In August 1989, he observed a large pile of trash, consisting of wooden flats for equipment storage, stacked over one story high, on the Whitehead Property. Anton Vackar, a friend of Kathryn Whitehead, testified that since 1986, he had visited the Whitehead Property approximately 12 times and that he saw trucks carrying pipe crossing the property as recently as June 22, 1990.

Clark admitted that his employees and others with whom he did business used the Property after the date on which he claimed to have terminated the holdover tenancy. He avowed that such use was infrequent and against his instructions. Instructing his personnel and customers to avoid using the Property, he and his employees placed warning signs around the Property and erected pipe barricades at certain perimeters of the Property. James Mitchell, a former supervisor for Clark Tubular, testified that he instructed employees and third parties to stay off the Property. David Wernick, a supervisor for Clark Tubular at the time of trial, testified that he instructed employees to avoid using the Property and that he had fired an employee who disregarded these instructions.

We find that the evidence is legally sufficient to support the jury finding that Clark Tubular continued to use the Whitehead Property as a holdover tenant until May 11, 1990. We also find, after reviewing the entire record, that the evidence is factually sufficient to support the jury's verdict.

 Clark argues that appellees were required to prove with sufficient evidence that Clark Tubular interfered with appellees' possession of the Whitehead Property and that Clark Tubular continuously occupied the Whitehead Property until May 11, 1990 because these contentions are necessary elements of appellees' cause of action. Moreover, Clark cites authority from other jurisdictions for the proposition that, without proof of *continuous* use of the Property by Clark Tubular and interference with appellees' possession, he is liable only for trespass. We disagree with both of these propositions. We have found no Texas authority that dictates that interference with the owner's possession is an element of holdover tenancy. Nor do we find that proof of continuous use of the property is a requisite of the owner's recovery. So long as there is evidence, as there is here, that permits a jury to reasonably infer that the tenant occupied the property for a period of time, a jury finding of holdover tenancy may stand. Furthermore, under Texas common law, a landlord may elect to treat a lessee in possession after the expiration of the lease as either a trespasser or as a tenant holding over under the terms of the original lease. *Bockelmann,* 788 S.W.2d at 571.

We overrule points of error one through and six.

We affirm the trial court's judgment.