# IN THE SUPREME COURT OF TEXAS

════════════

No. 11-0213

════════════

COINMACH CORP. F/K/A SOLON AUTOMATED SERVICES, INC., PETITIONER,

v.

ASPENWOOD APARTMENT CORP., RESPONDENT

══════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

══════════════════════════════════════════════════════

**Argued February 27, 2013**

JUSTICE BOYD delivered the opinion of the Court.

JUSTICE GUZMAN filed a concurring opinion, joined by JUSTICE DEVINE and JUSTICE BROWN.

We have previously explained that a tenant "who remains in possession of the premises after termination of the lease occupies 'wrongfully' and is said to have a tenancy at sufferance." *Bockelmann v. Marynick*, 788 S.W.2d 569, 571 (Tex. 1990). This case involves a commercial tenant that remained in possession for six years after it lost its lease when the property was sold through foreclosure. After arguing to the contrary—at times successfully—for over ten years, the tenant ultimately conceded that the foreclosure terminated the lease and, because the new owner immediately and continually insisted that the tenant vacate the premises, the tenant became a tenant at sufferance. We must decide whether the tenant can be liable for breach of the terminated lease, for trespass and other torts, or for violations of the Texas Deceptive Trade Practices-Consumer

Protection Act (DTPA), and whether the property owner can recover attorney's fees under the Texas Uniform Declaratory Judgments Act (UDJA). The trial court entered summary judgment for the tenant on all of the owner's claims, and the court of appeals reversed and remanded in part. Agreeing with the court of appeals, we hold that (1) a tenant at sufferance cannot be liable for breach of the previously-terminated lease agreement; (2) a tenant at sufferance is a trespasser and can be liable in tort (although the extent of liability depends on the nature of the trespass), including, in this case, tortious interference with prospective business relations; and (3) the tenant in this case cannot be liable under the DTPA because the property owner was not a consumer. Disagreeing with the court of appeals, we hold that (4) the property owner in this case cannot recover under the UDJA. We therefore affirm the court of appeals' judgment in part, reverse in part, render judgment for the tenant on the owner's claim for declaratory relief, and remand the case to the trial court for further proceedings.

## I.
## BACKGROUND

Coinmach Corp. installs and maintains coin-operated laundry machines in apartment complexes. Rather than lease its equipment to property owners, it leases laundry rooms from the owners and installs and operates its own machines in those rooms. In 1980, Coinmach entered into a ten-year lease of "the laundry room(s)" at the Garden View Apartments in Harris County, Texas. The lease was expressly "subordinate to any mortgage or deed of trust on the premises." In 1989, the parties extended the lease term until 1999. In 1994, the owner's lender foreclosed on its deed of trust. The individual who bought the complex at the foreclosure sale immediately deeded it to a

2

company he owned, and a few months later that company sold the complex to Aspenwood Apartment Corp.

Aspenwood immediately gave Coinmach written notice to vacate the laundry rooms, asserting that the foreclosure sale had terminated the lease and that Coinmach had failed to maintain the equipment in an adequate and safe condition. When Coinmach refused to vacate, Aspenwood removed Coinmach's equipment, began to remodel one of the laundry rooms, and filed a forcible entry and detainer (FED) action to evict Coinmach from the premises. Coinmach, in turn, obtained a writ of reentry from the justice court,[1] and refused to vacate the premises.

Two years later,[2] Aspenwood sent Coinmach another notice to vacate and filed a second FED action. This time, the justice court ordered Coinmach to vacate the property, but Coinmach appealed for a de novo trial and the county court at law reversed. Aspenwood appealed that judgment to the court of appeals, but that court ultimately dismissed the appeal for want of jurisdiction.[3] By then, the lease's 1999 termination date had passed, but Coinmach still refused to vacate. After Aspenwood contracted with a different laundry company and that company set up operations in a

---

[1] Aspenwood asserts that Coinmach obtained this writ ex parte based on a sworn affidavit that failed to disclose that the lease was expressly subordinate to a deed of trust that had been foreclosed, and that falsely stated that Coinmach's equipment was perfectly functional when in fact it was in bad condition and presented a danger to the complex's residents. We need not and do not consider these factual assertions to resolve this appeal.

[2] The record does not explain Aspenwood's delay in sending additional notices to vacate, or in filing this lawsuit. Again, we need not address these factual issues, other than to note the parties' agreement that Aspenwood continually objected, and never consented, to Coinmach's possession of the premises.

[3] See *Aspenwood Apartment Corp. v. Solon Automated Servs.*, No. 01-98-00516-CV, 1999 WL 1063435 (Tex. App.—Houston [1st Dist.] Nov. 24, 1999, no pet.) (not designated for publication); *see also* Acts of May 27, 1997, 75th Leg., ch. 1205 1997 Tex. Gen. Laws 4628-29 (amended 2011) (current version at TEX. PROP. CODE § 24.007(a)) (providing that final judgment of a county court in an eviction suit may not be appealed on the issue of possession unless the premises are used only for residential purposes).

laundry room that Coinmach had previously abandoned, Coinmach obtained another writ of reentry and forced that company to leave the premises, based this time on sworn testimony that the lease had automatically renewed for another nineteen-year term. Coinmach thus continually remained in possession of the premises, while Aspenwood continued to send additional notices to vacate, complaining of Coinmach's repeated failures to maintain the condition of its equipment, pay rent, and provide an accounting of its receipts. Aspenwood maintains it never cashed any checks it received from Coinmach.

Meanwhile, Aspenwood filed the present suit in district court in 1998, shortly after it filed the second FED action. Aspenwood originally asserted claims against Coinmach for trespass to try title, common law trespass, breach of the lease agreement, DTPA violations, statutory and common law fraud, tortious interference with prospective business relations, and a declaratory judgment that Coinmach had no right to possession and no leasehold interest in the property. Coinmach filed counterclaims for breach of the lease agreement, breach of warranties of possession, quiet enjoyment, fitness for a particular purpose, and suitability, defamation, tortious interference, bad faith, and harassment. The trial court first ruled as a matter of law that the 1994 foreclosure sale had terminated Coinmach's lease agreement. It then submitted the case to a jury, which found in favor of Aspenwood and awarded approximately $1.5 million, consisting of actual damages, DTPA treble damages, exemplary damages, attorney's fees, and prejudgment interest. In the spring of 2000, after the trial court entered judgment for Aspenwood on the jury's verdict, Coinmach vacated the premises.

4

Coinmach also filed a motion for new trial, however, and the trial court granted that motion. The parties subsequently amended their pleadings. Aspenwood reasserted all of its prior claims except for statutory and common law fraud, while Coinmach continued to deny liability but dropped all of its counterclaims. In May 2007, the trial court entered a partial summary judgment, ruling that the foreclosure sale terminated the lease and that Coinmach became a tenant at sufferance. Based on these holdings, the court struck all of Aspenwood's breach of contract claims. Coinmach then filed motions for summary judgment and Rule 166 motions asking the court to rule, as a matter of law, that a tenant at sufferance cannot be a trespasser; that Aspenwood could not seek declaratory relief and attorney's fees under the UDJA; that Aspenwood's trespass, trespass to try title, DTPA, and tortious interference claims were either moot or procedurally improper; and that, since Coinmach was not a trespasser, it could not be liable for such tort-based claims. In June 2008, the trial court issued orders granting Coinmach's motions, ruling that Aspenwood was not a consumer under the DTPA and that Coinmach had a possessory interest in the property from the time of foreclosure until it vacated the premises in 2000, and concluding that the effect of its legal rulings was to preclude Aspenwood's remaining claims as a matter of law. The court thus entered judgment that Aspenwood take nothing on its claims.

The court of appeals affirmed in part, reversed in part, and remanded. The court affirmed the dismissal of Aspenwood's breach of contract claims, holding that, because Aspenwood never consented to Coinmach's remaining on the premises, no actual or implied contractual relationship existed between the parties. 349 S.W.3d at 634. But the court reversed and remanded Aspenwood's claims for trespass, trespass to try title, tortious interference, and declaratory judgment, concluding

5

that Coinmach, as a tenant at sufferance, had no possessory interest in the property. *Id.* at 638–39. Finally, the court affirmed the dismissal of Aspenwood's DTPA claims, agreeing with the trial court that Aspenwood was not a consumer. *Id.* at 640. We granted both parties' petitions for review.

## II.
## DISCUSSION

Generally, a valid foreclosure of an owner's interest in property terminates any agreement through which the owner has leased the property to another. *B.F. Avery & Sons' Plow Co. v. Kennerly*, 12 S.W.2d 140, 141 (Tex. Comm'n App. 1929, judgm't adopted); *see also Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc.*, 938 S.W.2d 102, 108–09 (Tex. App.—Houston [14th Dist.] 1996, no writ); *ICM Mortg. Corp. v. Jacob*, 902 S.W.2d 527, 530–31 (Tex. App.—El Paso 1994, writ denied). This is particularly true when, as here, the lease agreement is expressly subordinate to a mortgage or deed of trust affecting the leased premises. Although Coinmach argued to the contrary in support of its effort to avoid eviction, even it now concedes that, "when an owner defaults on a mortgage and the property is sold at foreclosure, the purchaser takes the property free of any leases subordinate to the deed of trust being foreclosed upon." Agreeing that the 1994 foreclosure terminated Coinmach's lease of the laundry rooms, we address the effect of the termination on the parties' legal rights.

### A. Tenant at Sufferance

The parties now agree that, upon termination of the lease, Coinmach became a "tenant at sufferance." Despite their agreement on this point, we must briefly address the nature of a tenancy at sufferance, as a foundation for our discussion of the points on which the parties do not agree. A

6

tenant who continues to occupy leased premises after expiration or termination of its lease is a "holdover tenant." *See Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 908 (Tex. 2007). The status and rights of a holdover tenant, however, differ depending on whether the tenant becomes a "tenant at will" or a "tenant at sufferance." *See, e.g.*, TEX. PROP. CODE § 24.002(a)(2) (providing that a person commits a forcible detainer if the person "is a tenant at will or by sufferance, including an occupant at the time of foreclosure of a lien superior to the tenant's lease").

A tenant at will is a holdover tenant who "holds possession with the landlord's consent but without fixed terms (as to duration or rent)." BLACK'S LAW DICTIONARY 1604 (9th ed. 2009). Because tenants at will remain in possession with their landlords' consent, their possession is lawful, but it is for no fixed term, and the landlords can put them out of possession at any time. *Robb v. San Antonio St. Ry.*, 18 S.W. 707, 708 (Tex. 1891); *see also ICM Mortg.*, 902 S.W.2d at 530. By contrast, a tenant at sufferance is "[a] tenant who has been in lawful possession of property and wrongfully remains as a holdover after the tenant's interest has expired." BLACK'S LAW DICTIONARY 1605 (9th ed. 2009); *see also Bockelmann*, 788 S.W.2d at 571 ("A tenant who remains in possession of the premises after termination of the lease occupies 'wrongfully' and is said to have a tenancy at sufferance."). The defining characteristic of a tenancy at sufferance is the lack of the landlord's consent to the tenant's continued possession of the premises. *See, e.g.*, *ICM Mortg.*, 902 S.W.2d at 530. With the owner's consent, the holdover tenant becomes a tenant at will; without it, a tenant at sufferance.

A lease agreement may provide that its terms continue to apply to a holdover tenant. *See Bockelmann*, 788 S.W.2d at 571–72. But if, as here, the lease does not address the issue, and if the

7

parties do not enter into a new lease agreement, the parties' conduct will determine whether the holdover tenant becomes a tenant at will or a tenant at sufferance. *See, e.g.*, *Mount Calvary Missionary Baptist Church v. Morse St. Baptist Church*, 2005 WL 1654752, at *7 (Tex. App.—Fort Worth 2005, no pet.) (mem. op.). "Under the common law holdover rule, a landlord may elect to treat a tenant holding over as either a trespasser"—that is, a tenant at sufferance—"or as a tenant holding under the terms of the original lease"—that is, a tenant at will. *Bockelmann*, 788 S.W.2d at 571; *see also Howeth v. Anderson*, 25 Tex. 557, 572 (1860) (holding that a landlord may treat a holdover tenant as either a trespasser or a tenant at will). Thus, an implied agreement to create a new lease using the terms of the prior lease may arise if both parties engage in conduct that manifests such intent. *See, e.g.*, *ICM Mortg.*, 902 S.W.2d at 532–33; *Twelve Oaks Tower*, 938 S.W.2d at 108–10. If the tenant remains in possession and continues to pay rent, and the landlord, having knowledge of the tenant's possession, continues to accept the rent without objection to the continued possession, the tenant is a tenant at will, and the terms of the prior lease will continue to govern the new arrangement absent an agreement to the contrary. *See, e.g.*, *Carrasco v. Stewart*, 224 S.W.3d 363, 368 (Tex. App.—El Paso 2006, no pet.); *Barragan v. Munoz*, 525 S.W.2d 559, 561–62 (Tex. Civ. App.—El Paso 1975, no writ). The mere fact that the tenant remains in possession, however, is not sufficient to create a tenancy at will; unless the parties' conduct demonstrates the landlord's consent to the continued possession, the tenant is a tenant at sufferance. *See ICM Mortg.*, 902 S.W.2d at 533–34.

Aspenwood's conduct demonstrated that it never consented to Coinmach's continued possession of the property. Immediately after purchasing the complex, Aspenwood gave Coinmach

written notice to vacate the laundry rooms. Aspenwood maintains that it never cashed any checks it received from Coinmach, and Coinmach has not disputed that fact on appeal. Aspenwood promptly filed an FED action, and later filed another—along with the present trespass to try title suit—seeking to establish that Coinmach had no right to possession or legal interest in the property. We agree with the parties that, as to Aspenwood, Coinmach has always been a tenant at sufferance.

The parties do not agree, however, on the implications of Coinmach's status as a tenant at sufferance. Aspenwood contends that Coinmach is liable both for breach of the lease agreement and for tortious conduct, while Coinmach argues it is liable for neither. We now turn to these questions on which the parties disagree.

### B. Breach of Contract

The trial court and the court of appeals both held that, because the foreclosure terminated Coinmach's prior lease agreement, the lease did not contain a holdover provision, the parties did not expressly or impliedly form a new agreement, Aspenwood did not consent to Coinmach's continued possession, Coinmach became a tenant at sufferance, and no agreement between Aspenwood and Coinmach ever existed, Coinmach could not be liable for breach of any lease. We agree.

Aspenwood argues that, even though Coinmach was a tenant at sufferance, it still remained obligated under the terms of the prior lease and liable for its breaches of those terms. In support, however, Aspenwood relies on cases that address holdover tenants in general, not tenants at sufferance specifically. Aspenwood relies, for example, on *Barragan*, in which the El Paso Court of Appeals said "a holdover tenant continues to be bound by the covenants [that] were binding upon him during the term, in the absence of evidence to the contrary." 525 S.W.2d at 561. But in

9

*Barragan*, the tenant held over for nearly fifteen years after the lease agreement expired, and both parties operated as if the lease were continuously in effect. *Id.* The tenant paid rent as the lease required, and the landlord continuously accepted it. *Id.* The holdover tenant was thus a tenant at will, not a tenant at sufferance. *See id.* at 562.

Aspenwood contends that it is the tenant's continued possession, and not the payment or acceptance of rent, that determines the existence and nature of a holdover tenancy. The cases on which Aspenwood relies, however, do not support its contention. Instead, they confirm that the parties' conduct beyond the tenant's mere possession, or the terms of the parties' original agreement, may give rise to a tenancy at will. *See, e.g.*, *Carrasco*, 224 S.W.3d at 368 (holding that late-fee provision of expired lease applied to holdover tenant because tenant's testimony that the parties agreed it would not apply "is directly contrary to his course of conduct[,] which included paying a portion of the late fees assessed by [the landlord] in 2002 and 2003"); *Clark v. Whitehead*, 874 S.W.2d 282, 283–84 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (holding that "the holdover tenancy is an extension of the original lease term according to the provisions of the lease agreement," because the lease agreement "provided, among other things, . . . that in the event [tenant] held over after the term of the lease, the holding over would be on a month-to-month basis at a rental rate of $1500 a month").

In short, the cases on which Aspenwood relies involve holdover tenants who became tenants at will based on a holdover provision in the prior lease or on the parties' agreements or conduct after termination. Here, by contrast, the parties reached no agreements after the lease terminated. Aspenwood did not enter into a lease agreement with Coinmach and did not expressly or by its

10

conduct consent to Coinmach's continued presence.[4]  Coinmach thus became a tenant at sufferance,

and there existed no express or implied contract or agreement between the parties.  Coinmach cannot

be liable for breaching a contract that did not exist.  We thus affirm the part of the court of appeals'

judgment affirming the trial court's dismissal of Aspenwood's breach of contract claims.

## C. Trespass & Trespass to Try Title

Coinmach contends that, even though it was a tenant at sufferance, it was not a "trespasser"

and cannot be liable on any tort-based theories.  The trial court agreed with Coinmach, finding that

Coinmach had a limited right of possession during the holdover period.  The court of appeals

disagreed, based on our prior decisions that characterize a tenant at sufferance as a "trespasser" who

occupies the premises "wrongfully." *See Bockelmann*, 788 S.W.2d at 571 ("A tenant who remains

in possession of the premises after termination of the lease occupies 'wrongfully' and is said to have

a tenancy at sufferance."); *Howeth*, 25 Tex. at 572 (explaining that a landlord may treat a holdover

tenant as either a "trespasser" or as a tenant at will); *see also Carrasco*, 224 S.W.3d at 368 (stating

that a tenant at sufferance occupies the premises "wrongfully").

Coinmach contends, however, that the Texas Legislature has relieved a tenant at sufferance

of any trespasser status by providing a "grace period" during which the tenant is permitted to remain

in possession pending statutory eviction proceedings.  According to Coinmach, a tenant at sufferance

---

[4] Aspenwood further argues that the conduct of the justice court created a tenancy at will because the court "judicially compelled" Aspenwood to become a party to Coinmach's lease by granting the writ of reentry in the first FED action.  But it is the landlord's intent, determined by its conduct, that determines the nature of the tenancy. *See ICM Mortg.*, 902 S.W.2d at 530; *Bockelmann*, 788 S.W.2d at 571; *Robb*, 18 S.W. at 708; *Howeth*, 25 Tex. at 572.  Even though the justice court permitted Coinmach to remain in possession, Aspenwood never consented to Coinmach's possession and instead continued to insist that Coinmach vacate the property.  Thus, as both parties agree, Coinmach was at all times a tenant at sufferance as to Aspenwood, despite the justice court's decision.

11

does not become a trespasser unless and until the tenant refuses to leave after the landlord has finally prevailed in the statutory eviction process. Coinmach is correct that the Texas Property Code provides specific procedures for adjudicating legal and possessory interests in real property. Specifically, chapter 22 governs trespass to try title suits to determine "title to lands, tenements, or other real property," and chapter 24 governs FED actions to determine a party's right to possession of real property. TEX. PROP. CODE §§ 22.001–.045 (Trespass to Try Title), 24.001–.011 (Forcible Entry and Detainer). We agree that these procedures governed Aspenwood's efforts to obtain possession of the property. As the Fourteenth Court of Appeals has explained, a foreclosure sale "transfers title from the debtor to another party, but it does not put the new owner in possession; it gives him a right to possession . . . . To remove a tenant by sufferance, the new owner must file a forcible detainer suit." *Lighthouse Church of Cloverleaf v. Texas Bank*, 889 S.W.2d 595, 603 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

Coinmach notes that chapter 24 requires a landlord to provide a commercial tenant at least three days' written notice before filing an FED action, and to provide a residential tenant who has paid rent at least thirty days' written notice. *See* TEX. PROP. CODE § 24.005(b). In Coinmach's view, these "grace periods" grant to a tenant at sufferance a possessory estate that is "lesser" than one that a tenant at will would have, yet superior to that of the property owner. Because of this, Coinmach contends, the owner cannot engage in self-help to remove the tenant, but instead must pursue eviction through the statutory process. If the owner attempts to evict the tenant without complying with the statutory eviction process, Coinmach argues, the owner interferes with the tenant's right of possession, and thus the owner becomes the one liable for trespass. *See Russell v. Am. Real Est.*

12

*Corp.*, 89 S.W.3d 204, 208–09 (Tex. App.—Corpus Christi 2002, no pet.) (holding that owner's property manager who interfered with tenant's possession during statute's 30-day notice period could be liable for trespass and conversion). The landlord is protected, however, because the tenant has only a "lesser" possessory estate, which cannot be assigned and can be terminated through a suit for forcible detainer. *See ICM Mortg.*, 902 S.W.2d at 530. Thus, Coinmach contends, when courts have said that tenants at sufferance occupy the premises "wrongfully," they meant only "without consent," not tortiously; and when they have called such tenants "trespassers," they meant only that the landlords can evict them, not that they can be liable for trespass. Because Coinmach only retained possession pursuant to its victories in the FED actions in the justice courts, and then promptly gave up possession when the district court entered judgment on the jury verdict requiring it to do so, Coinmach contends it cannot be liable for trespass.

Aspenwood, by contrast, points out that an FED action is not the exclusive means to obtain possession of one's property, but is in addition to any other available remedy. *Scott v. Hewitt*, 90 S.W.2d 816, 819 (Tex. 1936). Here, Aspenwood contends, an action for trespass to try title and for trespass damages was the proper means to resolve both Coinmach's claim to title under the lease and its rival claim to possession. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 755 (Tex. 2003); *Yoast v. Yoast*, 649 S.W.2d 289, 292 (Tex. 1983); *Hill v. Preston*, 34 S.W.2d 780, 787 (Tex. 1931). A judgment in an FED action is not res judicata against a related claim for trespass to try title,[5] and a party who loses possession in the FED action may still sue in district court to obtain adjudication

---

[5] *See* TEX. CIV. PRAC. & REM. CODE § 31.004(a), (c) (providing that a determination of fact or law in a proceeding in a lower trial court, including a justice of the peace court, is not res judicata or basis for estoppel by judgment in a district court proceeding).

of its title and its right to regain possession of the property. *See Villalon v. Bank One*, 176 S.W.3d 66, 70–71 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *see also Reese v. Reese*, 672 S.W.2d 1, 2 (Tex. Civ. App.—Waco 1984, no writ). By retaining possession in reliance on the justice court's erroneous FED judgments, Aspenwood contends, Coinmach accepted the risk that it ultimately would lose the title claim and be held liable as a trespasser.

We agree that Coinmach can be held liable for trespass, but for slightly different reasons. As we have explained, under the common law a tenant at sufferance has no legal title or right to possession, and is thus a "trespasser" who possesses the property "wrongfully." The question that Coinmach raises is whether the Legislature has altered the common law through the statute governing FED actions. The Legislature has itself answered that question, expressly providing in section 24.008 that a suit for eviction under the FED statute "does not bar a suit for trespass, damages, waste, rent, or mesne profits." TEX. PROP. CODE § 24.008. We held long ago that the remedies against a holdover tenant include a forcible detainer action for possession and an action for recovery of damages, including trespass damages. *Holcombe v. Lorino*, 79 S.W.2d 307, 309 (Tex. 1935). In section 24.008, the Legislature made it clear that an FED action does not bar a suit to obtain these remedies.

"The only issue in a forcible detainer action is the right to actual possession of the premises." *Marshall v. Hous. Auth. of the City of San Antonio*, 198 S.W.3d 782, 785 (Tex. 2006). Such an action "is intended to be a speedy, simple, and inexpensive means to obtain immediate possession of property." *Id*. at 787. The judgment in a forcible detainer action is a final determination only "of the right to immediate possession;" it is not "a final determination of whether the eviction is

14

wrongful" or whether the tenant's continued possession was a trespass. *Id*.; *see also House v. Reavis*, 35 S.W. 1063, 1067 (Tex. 1896) (holding that FED action did not affect "merits of the title" and was "no bar to the recovery of the plaintiffs" in subsequent action for title and damages); *Johnson v. Highland Hills Drive Apartments*, 552 S.W.2d 493, 494 (Tex. Civ. App.—Dallas 1977, no writ) (holding that predecessor to section 24.008 "prevents a judgment of possession in a forcible entry and detainer action from barring a subsequent action for damages for wrongful eviction").[6]

We hold that chapter 24's procedural protections do not grant to tenants at sufferance any legal interests in or possessory rights to the property at issue; rather, the statute provides procedural protections that apply once the tenant has lost, or allegedly lost, all legal interests and possessory rights. Although the landlord must comply with the statute's procedural requirements to evict the tenant at sufferance, eviction is allowed only if the tenant has no remaining legal or possessory interest, which makes the tenant a tenant at sufferance. The FED action and judgment do not bar a separate action for trespass or for wrongful eviction, and if it is determined in that action that the tenant lacked any legal interest or right of possession, the tenant at sufferance is a trespasser. Nothing in the statute indicates that the procedural protections grant legal or possessory rights to a tenant at sufferance. To the contrary, the statute states that the "person entitled to possession of the property" is not the tenant but the person seeking the eviction, that is, the one who "must comply

---

[6] As we have noted, Coinmach obtained writs of reentry granting Coinmach possession of the property. A writ of reentry, however, merely "entitles the tenant to immediate and temporary possession of the premises, pending a final hearing on the tenant's sworn complaint for reentry," and "does not affect the rights of a landlord or tenant in a forcible detainer or forcible entry and detainer action." TEX. PROP. CODE § 92.009(c), (m); *see also id*. § 93.003(c), (m) (same for commercial tenants following an unlawful lockout). Like the judgment in a forcible detainer action, a writ of reentry does not determine whether the eviction was wrongful or whether the tenant's possession of the property constituted a trespass.

with the [procedural] requirements." TEX. PROP. CODE § 24.002(b). And, even more directly, the statute expressly provides that a suit for eviction under the FED statute "does not bar a suit for trespass." *Id.* § 24.008. Thus, despite the so-called "grace periods" and chapter 24's other procedural protections, the tenant at sufferance remains a trespasser on the property.

Coinmach and amicus curiae Texas Housing Justice League argue that this holding exposes innocent, low-income tenants to an unbearable risk of excessive liability in tort. We disagree. "The commission of a trespass does not necessarily mean the actor will be liable for damages." *Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198, 201 (Tex. 1981) (addressing trespass to chattels, and citing *Lyle v. Waddle*, 188 S.W.2d 770 (Tex. 1945); Restatement (Second) of Torts § 218 (1965)). Although we have rarely addressed trespass damages in detail, Texas courts of appeals have provided helpful explanations of the common law principles that apply. Summarizing these principles, the Waco Court of Appeals has explained that a trespasser's liability for damages depends on the nature of the trespass and the nature of the harm:

> Every unauthorized entry upon land is a trespass even if no damage is done. However, to determine what damages, if any, are recoverable for a trespass, the type of conduct or nature of an activity that causes the entry must be identified. While a trespass is a trespass, different recoveries are available, depending on whether the trespass was committed intentionally, negligently, accidentally, or by an abnormally dangerous activity.

*Watson v. Brazos Elec. Power Coop.*, 918 S.W.2d 639, 645 (Tex. App.—Waco 1996, writ denied) (citation omitted) (citing Rest. (Second) of Torts §§ 158, 165, 166 (1965)).

Thus, "one who invades or trespasses upon the property rights of another, while acting in the good faith and honest belief that he had the lawful and legal right to do so is regarded as an innocent

16

trespasser and liable only for the actual damages sustained." *Wilson v. Texas Co.*, 237 S.W.2d 649, 651 (Tex. Civ. App.—Fort Worth 1951, writ ref'd n.r.e.). In calculating the actual damages sustained, as the Dallas Court of Appeals has stated, "the measure of damages in a trespass case is the sum necessary to make the victim whole, no more, no less." *Meridien Hotels, Inc. v. LHO Financing P'ship 1, L.P.*, 255 S.W.3d 807, 821 (Tex. App.—Dallas 2008, no pet.). When the trespass causes a temporary injury, the "amount necessary to place the plaintiff in the position it would have been in but for the trespass" generally includes the cost to repair any damage to the property, loss of use of the property, and loss of any expected profits from the use of the property. *Id.; see also Vaughn v. Drennon*, 372 S.W.3d 726, 738 (Tex. App.—Tyler 2012, no pet.) (same); *Williams v. Garnett*, 608 S.W.2d 794, 797 (Tex. Civ. App.—Waco 1980, no writ) ("Loss of rentals is an appropriate measure of damages for the temporary loss of use of land occasioned by a trespass."); *Mangham v. Hall*, 564 S.W.2d 465, 468 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.) (holding that business owner can recover lost net profits).

Although we do not necessarily approve of the entirety of each of these decisions, taken together they provide a reliable summary of the damages recoverable against trespassers in general. Consistent with these decisions, our rules recognize that damages available in a trespass to try title suit include lost rents and profits, damages for use and occupation of the premises, and damages for any special injury to the property. *See* TEX. R. CIV. P. 783(f) (recognizing recoverability of "rents and profits" in trespass to try title actions); *id.* 805 ("use and occupation" and "special injury to the property"); *see also Musquiz v. Marroquin*, 124 S.W.3d 906, 912 (Tex. App.—Corpus Christi 2004, pet. denied). Similarly, Texas courts have recognized that a tenant at sufferance is generally liable

17

only for the reasonable amount of rent as damages for the trespass. *See Downwind Aviation, Inc. v. Orange Cnty.*, 760 S.W.2d 336, 340 (Tex. App.—Beaumont 1988, writ denied) (landlord's proper measure of damages is the reasonable rent for the time the tenant held over); *see also Standard Container Corp. v. Dragon Realty*, 683 S.W.2d 45, 48 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) (same); *Kaplan v. Floeter*, 657 S.W.2d 1, 3 (Tex. App.—Houston [1st Dist.] 1983, no writ) (same). In addition to the reasonable rents, a tenant at sufferance, like any other trespasser, could also be liable for any special injury to the property. But the fact that tenants at sufferance are trespassers under the law does not automatically expose innocent tenants, who remain in possession under a good faith belief that they are entitled to do so, to liability for additional damages in tort. Such tenants will be liable for reasonable rent (the landlord's loss of use), the cost to repair any damage that the tenant caused to the property, and—in a proper case—the landlord's lost profits, but nothing more.[7]

By contrast, tenants who knowingly and intentionally trespass, or who do so maliciously, may be liable for additional forms of damages. For example, Texas courts have required a showing of deliberate and willful trespass and actual property damage before awarding damages for emotional distress or mental anguish, thereby limiting the potential for such "excessive liability." *Pargas of Longview, Inc. v. Jones*, 573 S.W.2d 571, 574 (Tex. Civ. App.—Texarkana 1978, no writ) ("[A]ctual

---

[7] Typically, the landlord could not recover both reasonable rent and lost profits because "recovery . . . is limited to the amount necessary to place the plaintiff in the position it would have been in but for the trespass." *Meridien*, 255 S.W.3d at 821. Lost profits are measured by deducting operating expenses from gross earnings, resulting in net profits. *See, e.g.*, *Mangham*, 564 S.W.2d at 468–69. Reasonable rent—i.e., the value of the use of the property—is calculated as part of the operating expenses, and thus is already included in the net profit calculation. To allow the plaintiff to recover both reasonable rent and lost profits would, in most cases, constitute a double recovery. In a residential lease—where there is no business or for-profit endeavor—lost profits would constitute the profits normally associated with reasonable rent.

damages resulting from mental distress may be recovered, as a separate and independent element, *when caused by a deliberate and willful trespass* in which *actual damage* to plaintiff's property is sustained." (emphases added)); *see also Michels v. Crouch*, 150 S.W.2d 111, 112–13 (Tex. Civ. App.—Eastland 1941, writ dism'd judgm't cor.); *Cartwright v. Canode*, 171 S.W. 696, 697 (Tex. 1914). Similarly, exemplary damages are recoverable only when "the harm . . . results from: (1) fraud; (2) malice; or (3) gross negligence." TEX. CIV. PRAC. & REM. CODE § 41.003(a). So a defendant will not be liable for exemplary damages when the trespasser acted "in good faith," "without wrongful intention," or "in the belief that he was exercising his rights." *Wilen v. Falkenstien*, 191 S.W.3d 791, 800 (Tex. App.—Fort Worth 2006, pet. denied) ("Exemplary damages are recoverable for the tort of trespass if the trespass was committed maliciously."); *see also, e.g.*, *Pargas*, 573 S.W.2d at 574 (citing *Hood v. Adams*, 334 S.W.2d 206, 208–09 (Tex. Civ. App.—Amarillo 1960, no writ)) ("In the case of a trespass, punitive damages may be recovered if actual damage has been sustained and the trespass upon the plaintiff's property is shown to have been deliberate and intentional.").

Thus, if a new owner following foreclosure seeks to evict a tenant at sufferance in violation of the FED statute, the tenant can take advantage of the statute's procedural protections by objecting to that violation and maintain possession until the owner complies with the statute's requirements. But the tenant will generally be liable for reasonable rent for the period the tenant remains in possession, and for any additional damages the tenant may cause to the property. If the new owner complies with the FED statute's requirements and the tenant vacates as and when required, the result

is the same. Because the tenant vacates and does not contest the loss of its legal interest under the lease, title never becomes an issue, and only eviction proceedings are required.

Here, Aspenwood, as the new owner, immediately gave Coinmach notice to vacate the premises, in compliance with the statute, and Coinmach refused to vacate, claiming for over ten years that the foreclosure sale did not terminate the lease and that it still had a legal interest in the property. Coinmach's position (which it has since abandoned) required Aspenwood to resolve a title dispute, and not just sue for possession under chapter 24. Having remained in possession as a trespasser, Coinmach is liable for the reasonable rent and for any other damage it may have caused to the property. Its liability for any additional damages will depend on whether its trespass was willful, intentional, or malicious. For these reasons, we affirm the part of the court of appeals' judgment reversing the trial court's dismissal of Aspenwood's claims for trespass and trespass to try title, and we remand those claims to the trial court for further proceedings.

### D. Tortious Interference

Texas law protects prospective contracts and business relations from tortious interference. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001); *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 665 (Tex. 1990), *superseded on other grounds by statute as stated in Prop. Tax Assocs., Inc. v. Staffeldt*, 800 S.W.2d 349, 350 (Tex. App.—El Paso 1990, writ denied). To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially

certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Sturges*, 52 S.W.3d at 726 (addressing requirement of predicate tort or unlawful conduct); *Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001) (holding defendant must intend to interfere); *see Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (listing elements); *see also Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 115 (Tex. App.—El Paso 1997, pet. denied) (same).

Here, the trial court granted Coinmach's motion for summary judgment on Aspenwood's tortious interference claim, finding that Coinmach did not commit any independent tort or unlawful act and, in any event, the two-year statute of limitations bars Aspenwood's claim.[8] The court of appeals reversed, holding that, because Coinmach was a trespasser that did not have any possessory interest in the property, Aspenwood raised a fact issue as to the independent tort element. As to Coinmach's limitations defense, the court of appeals held that Coinmach's ongoing trespass continually interfered with Aspenwood's ability to lease the laundry rooms to another tenant, and thus limitations was tolled under the continuing tort doctrine.

Coinmach first contends that the court of appeals erred because Coinmach's assertion of a right to remain on the property during the eviction process, without more, does not constitute an independent tort sufficient to support a tortious interference claim. As we have held, however, Coinmach remained a trespasser from the time Aspenwood first sent a notice to vacate until

---

[8] In her concurrence, Justice Guzman addresses the "intent to interfere" element of a tortious interference claim. While we do not necessarily disagree with her thoughts on that element, we do not address them because neither the trial court, court of appeals, or parties in this case raised or addressed any issue regarding that element of Aspenwood's claim.

Coinmach vacated the premises six years later. "Even in the absence of damages, a trespass has occurred which is important in determining the legal relations between the parties." *Zapata*, 615 S.W.2d at 201 (citing Rest. (Second) of Torts § 217, cmt. A (1965)). Here, the trespass is an independently tortious or wrongful act that could support a claim for tortious interference with prospective business relations.

Coinmach next argues that, even if remaining on the premises could support a claim for tortious interference, the two-year statute of limitations bars Aspenwood's claim. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a); *First Nat'l Bank Of Eagle Pass v. Levine*, 721 S.W.2d 287, 289 (Tex. 1986) (holding suit for tortious interference is subject to two-year statute of limitations). Aspenwood alleged that Coinmach's tortious interference began when it refused to vacate the premises in 1994 and continued until it finally vacated in 2000. Relying on the continuing tort doctrine, Aspenwood argues that its cause of action continually accrued throughout that period, and thus Aspenwood timely filed its claim in March 1998.

We have "neither endorsed nor addressed" the continuing tort doctrine. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.8 (Tex. 2005). Coinmach argues that we need not do so in this case because of the unique nature of a suit for tortious interference with prospective business relations. Specifically, Coinmach relies on courts of appeals' decisions that have refused to apply the doctrine because a plaintiff asserting tortious interference with prospective business relations must prove not only that the defendant committed an independently tortious or wrongful act, but also that the act interfered with a reasonably probable contract that would have been entered into but for the interference. *See Richardson-Eagle*, 213 S.W.3d at 475–76; *see also Tex. Disp. Sys. Landfill,*

22

*Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 588 (Tex. App.—Austin 2007, pet. denied). We agree with Coinmach. Aspenwood must not only establish that Coinmach committed a trespass or other independent tort, it must also prove that Coinmach's conduct actually interfered with a reasonably probable contract. Aspenwood has neither pled nor proven a "continually available" prospective contract, so we need not consider whether the continuing tort doctrine would or should be available for this claim.

Instead, the question is whether Aspenwood has established that (or at least created a fact issue as to whether) Coinmach's refusal to vacate the premises interfered with a reasonably probable contract during the two years prior to Aspenwood's filing of this suit in March 1998. Aspenwood points to evidence that in 1999, a year after Aspenwood filed this suit, Aspenwood contracted with another company, which moved into a laundry room that Coinmach had abandoned, only to be evicted by Coinmach in July 1999. Coinmach contends that there is no evidence that Aspenwood actually entered into a contract with that company in 1999, and in any event, an alleged act of interference occurring after Aspenwood filed the claim does not retroactively save the claim from having been barred by limitations at the time it was filed. Because the trial court granted summary judgment on this claim based on its legal ruling, rather than the evidence, that court has never yet considered whether Aspenwood created a fact issue to defeat summary judgment on Coinmach's limitations defense. Having clarified the legal standards that govern this claim, we believe the trial court should consider the parties' evidentiary arguments in the first instance, in light of our legal holdings. For this reason, we affirm the part of the court of appeals' judgment reversing and remanding Aspenwood's tortious interference claim.

## E. DTPA violations

The trial court granted Coinmach's motion for summary judgment on Aspenwood's DTPA claims on the ground that Aspenwood is not a "consumer," and the court of appeals affirmed. A "consumer" under the DTPA is one who "seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE § 17.45(4). The parties agree that a party's status as a consumer is typically a question of law for the courts to decide. *See Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 401 (Tex. App.—San Antonio 2000, no pet.).

The court of appeals held that Aspenwood is not a consumer because it did not seek or acquire goods or services from Coinmach but instead was entitled only to receive rent payments as consideration for Coinmach's occupancy of the premises. Aspenwood contends that the court of appeals erred because Coinmach's own annual reports and marketing materials proclaim that Coinmach is a "supplier of outsourced laundry-equipment *services* for multi-family housing properties," and that its customers are "landlords, property management companies, and owners of rental apartment buildings" (emphasis added). Based on these statements, Aspenwood contends that Coinmach provided Aspenwood with laundry equipment, maintenance services on that equipment, and "money-collection and accounting services." Relying on our decision in *DeWitt Cnty. Electric Coop. v. Parks*, 1 S.W.3d 96 (Tex. 1999), in which we held that an electricity co-op that received an easement interest in real property also agreed to provide electricity services to the landowner, Aspenwood contends that Coinmach both received a leasehold interest and agreed to provide laundry and related services to its landlords.

We are not persuaded. Although Coinmach's marketing materials may have emphasized the benefits that a landlord can receive by leasing laundry rooms to Coinmach, the landlord derives these benefits from Coinmach's provision of laundry services *to the landlord's tenants*, not to the landlord itself. Under Coinmach's business model, Coinmach did not lease equipment to the landlord, nor did it service equipment that belonged to the landlord. Instead, Coinmach leased premises from the landlord, and paid rent to the landlord based on the income that it earned from the use of those premises. The use of the premises, however, was to provide laundry services to the landlords' tenants, not to the landlords themselves. While it is true that a contractual relationship can include both the granting of a property interest and an agreement to provide goods or services, in *DeWitt* the co-op provided services *to the landowner*. Here, Coinmach provided laundry services to Aspenwood's other tenants.

We agree with Coinmach. A party is not a consumer when it merely arranges for a service to be provided to its customers, even if the party indirectly benefits from the provision of that service. *See Kennedy v. Sale*, 689 S.W.2d 890, 893 (Tex. 1985) ("A plaintiff establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant." (quoting *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex. 1983)); *see also Favor v. Hochheim Prairie Farm Mut. Ins. Ass'n*, 939 S.W.2d 180, 182 (Tex. App.—San Antonio 1996, writ denied); *Shelton Ins. Agency v. St. Paul Mercury Ins. Co.*, 848 S.W.2d 739, 744 (Tex. App.—Corpus Christi 1993, writ denied). A barber shop that leases space in a shopping mall may indirectly provide benefits to the mall's owner by drawing more customers to the mall, but it provides its barber services to its own customers, not to the mall's owner. The same could be said

25

of a shoeshine stand in an airport, a grocery store in a strip center, or any number of other lease arrangements through which the landlord benefits from the tenant's provision of goods or services to others. Because the benefits Aspenwood received from Coinmach's provision of services at the complex were at best indirect, we hold that those services were insufficient to make Aspenwood a consumer under the DTPA. We thus affirm that part of the court of appeals' judgment affirming the trial court's summary judgment in favor of Coinmach on Aspenwood's DTPA claims.

### F. Declaratory Relief

Finally, we turn to Aspenwood's claim under the Texas Uniform Declaratory Judgments Act. TEX. CIV. PRAC. & REM. CODE §§ 37.001–.011. The trial court granted summary judgment for Coinmach on this claim, and the court of appeals reversed. Coinmach contends that Aspenwood's claim for declaratory relief is redundant of its claim for trespass to try title, and that Aspenwood included this claim merely as a means to seek an award of attorney's fees under section 37.009.

As Aspenwood notes, the UDJA permits parties to obtain judicial declarations of their rights, status, and legal relations under contracts and other written agreements. *Id.* § 37.004(a). In this case, however, Aspenwood sought a determination of its legal interests and possessory rights to the rooms that Coinmach occupied, which is the very relief that the trespass-to-try-title statute governs. We have previously held that, when "the trespass-to-try-title statute governs the parties' substantive claims . . . , [the plaintiff] may not proceed alternatively under the Declaratory Judgments Act to recover their attorney's fees." *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004). In so holding, we noted that the Legislature has provided the trespass-to-try-title statute as "*the* method of

26

determining title to . . . real property," and the Legislature did not provide for attorney's fees in such actions. *Id.* (citing TEX. PROP. CODE § 22.001(a)) (emphasis added).

Aspenwood points out that, since our decision in *Martin*, some courts of appeals have held that the UDJA remains an appropriate alternative avenue to determine property interests, at least when the dispute involves construction of a written agreement. *See, e.g.*, *Roberson v. City of Austin*, 157 S.W.3d 130, 133 (Tex. App.—Austin 2005, no pet.) (UDJA available to determine validity of an easement agreement); *Florey v. Estate of McConnell*, 212 S.W.3d 439, 449 (Tex. App.—Austin 2006, pet. denied) (UDJA available in suit to determine validity of deed of trust). While we neither approve nor disapprove of the holdings in these cases, we note that they distinguish themselves from cases that involve determinations of possessory interests in property. *Roberson*, 157 S.W.3d at 136; *Florey*, 212 S.W.3d at 449.

It is undisputed that the present case requires determination of the parties' possessory rights to the property, and does not involve construction of a written agreement. We see no legitimate basis to distinguish this case from *Martin*, in which we affirmed and upheld the Legislature's intent that chapter 22 of the Texas Property Code govern the resolution of disputes involving legal interests in real property. We therefore reverse the part of the court of appeals' judgment reversing the trial court's summary judgment on Aspenwood's claim for declaratory judgment, and we render judgment against Aspenwood on that claim.

**III.
CONCLUSION**

27

The lease from which this case arises terminated nearly twenty years ago. Unfortunately, we cannot say the same about the parties' disputes. We agree with the court of appeals that the trial court erred in dismissing some of Aspenwood's claims against Coinmach. We affirm the parts of the court of appeals' judgment affirming the trial court's dismissal of Aspenwood's breach of contract and DTPA claims. We reverse the part of the court of appeals' judgment reversing the trial court's summary judgment on Aspenwood's declaratory judgment claim, and we render judgment against Aspenwood on that claim. Finally, we affirm the part of the court of appeals' judgment reversing and remanding Aspenwood's claims for trespass, trespass to try title, and tortious interference with prospective business relations, and we remand those claims to the trial court for further proceedings consistent with this opinion.

_____
Jeffrey S. Boyd
Justice


**OPINION DELIVERED:** November 22, 2013