

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-20-00009-CV
_____

**RICKY'S TOWING OF AMARILLO, LLC AND
CANTU TOWING, LLC, APPELLANTS**

**V.**

**T-MILLER WRECKER SERVICES, INC., APPELLEE**

On Appeal from the County Court at Law No. 2
Potter County, Texas
Trial Court No. 102,464-2-CV; Honorable Matthew H. Hand, Presiding

March 16, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellants, Ricky's Towing of Amarillo, LLC and Cantu Towing, LLC (hereinafter collectively referred to as "Ricky's Towing") appeal from the trial court's order rendering judgment against Ricky's Towing and in favor of Appellee, T-Miller Wrecker Services, Inc. (hereinafter "T-Miller") based on a theory of tortious interference with contract. Ricky's

Towing challenges the order through three issues.  We affirm the judgment of the trial court.

**BACKGROUND**

This case involves a contractual relationship between Potter County and various local towing companies.[1]  As part of that established agreement, when Potter County requires towing services, it selects a provider from an approved list of towing companies on an equal rotation basis.  According to the parties to this suit, the agreement was intended to impose fairness among the local towing companies.[2]

The towing contracts included a clause called the "interrelated clause."  That clause instructed that each towing company (including interrelated companies) was permitted to appear on the rotation list only once.  Therefore, no towing company was permitted to appear on the list more than once and no towing company was permitted to start another company or have another company under the same owner in order to appear on the list more than once.  Under the clause, towing companies were not permitted to share equipment, including trucks or storage facilities, and were required to have separate business locations.

At issue here are two companies, Ricky's Towing, LLC and Cantu Towing, LLC. The companies were owned by Ricky Cantu and his wife, respectively.  Both companies

---

[1] This court previously addressed related claims in *T-Miller Wrecking Servs. v. Ricky's Towing of Amarillo, LLC*, No. 07-15-00213-CV, 2017 Tex. App. LEXIS 3604 (Tex. App.—Amarillo April 21, 2017, no pet.) (mem. op.).

[2] At trial, it was noted that the contract included a provision stating its purpose was to establish minimum standards and criteria for provisions of wrecker services by operators participating on the county's rotation log.

became parties to the contract with Potter County and both companies appeared on the rotation towing log as separate companies. T-Miller sued Ricky's Towing and Cantu Towing alleging the two companies were one company that shared employees, equipment, and facilities and, thereby, took advantage of being on the rotation towing list twice. According to T-Miller, this allowed Ricky's Towing and Cantu Towing to obtain more referrals for tows than other local companies which was exactly what the interrelated clause in their contract with Potter County was intended to prevent.

The suit was brought for resolution before a jury. T-Miller argued it lost money because Ricky's Towing and Cantu Towing breached the agreement with Potter County and obtained tows that should have been referred to and, therefore, completed by T-Miller. Ricky's Towing and Cantu Towing argued T-Miller did not have standing to sue regarding a contract other than its own and that Ricky's Towing and Cantu Towing never breached their contract with Potter County. At the conclusion of the trial, the jury returned a verdict finding both Ricky's Towing and Cantu Towing intentionally interfered with the contract between Potter County and T-Miller. It also found Ricky's Towing and Cantu Towing wrongfully interfered with T-Miller's prospective business relations. It found damages in favor of T-Miller in the amount of $7,959 and lost business potential in favor of T-Miller in the amount of $5,000.

Following the jury's verdict, Ricky's Towing and Cantu Towing filed a *Motion for Judgment Notwithstanding Verdict* and T-Miller filed a *Motion for Entry of Judgment.* The trial court granted in part the *Motion for Judgment Notwithstanding Verdict* on the claim of intentional interference with an existing contract and found that judgment should be rendered in favor of T-Miller and against Ricky's Towing and Cantu Towing on the claim

of wrongful interference with prospective relations.[3]  It entered judgment in favor of T-Miller against Ricky's Towing and Cantu Towing in the amount of $10,654.16.

## ANALYSIS

### STANDARD OF REVIEW

We review a judgment notwithstanding the verdict under a legal sufficiency standard, viewing the evidence and all inferences, if any, in the light most favorable to the jury's finding.  *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005).  If more than a scintilla of evidence supports the jury's finding, "the jury's verdict and not the trial court's judgment must be upheld."  *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003).  More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."  *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).  Evidence that is "so weak as to do no more than create a mere surmise," however, is no more than a scintilla and, thus, no evidence.  *Ridgway*, 135 S.W.3d at 601 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

Through its issues, Ricky's Towing argues T-Miller failed to complain of or allege an independent tortious act.  Further, it asserts, the record contains no evidence of an independent tortious or unlawful act by Ricky's Towing.  Lastly, it contends any

---

[3] In its appellate brief, Ricky's Towing argues that a cause for "wrongful" interference with prospective business relations as set forth in the trial court's judgment and instructions to the jury is not a recognized cause of action in Texas.  While we agree that the proper cause of action would be "tortious interference with prospective business relations," we do not find the trial court's incorrect reference to the cause of action to be fatal to T-Miller's appellate claims.

interference was merely incidental and thus, cannot be the basis of a tortious interference with prospective business relations action.

Texas law protects prospective contracts and business relations from tortious interferences. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001). To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013); *MVS Int'l Corp. v. Int'l Advertising Solutions, LLC*, 545 S.W.3d 180, 199 (Tex. App.—El Paso 2017, no pet.); *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 168 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

As to Ricky's Towing's first assertion, T-Miller points out that one does not have to plead or prove an independent tort. *Sturges*, 52 S.W.3d at 726; *Silver Lion v. Dolphin St.*, No. 01-07-00370-CV, 2010 Tex. App. LEXIS 3873, at *19, n.1 (Tex. App.—Houston [1st Dist.] May 20, 2010, pet. denied) (mem. op.). Instead, one need only prove that the defendant's conduct would be actionable under a recognized tort. *Sturges*, 52 S.W.3d at 726. T-Miller contends it has done so here. It notes that the record shows Ricky's Towing engaged in conduct that surpassed lawful competition because each of the parties entered into agreements that limited the conduct permitted with regard to dispatch calls.

5

Other operators relied on the interrelation provision contained within each of the contracts and the placement of both Ricky's Towing and Cantu Towing on the rotation list created an unfair competitive advantage and caused the unjust enrichment of Ricky's Towing at the expense of T-Miller. This was sufficient evidence from which a jury could have determined the commission of an independent tortious act on the part of Ricky's Towing.

T-Miller also disagrees with Ricky's Towing's second assertion, i.e., that the record contains no evidence of an independent tortious or unlawful act by Ricky's Towing. T-Miller first argues that it presented more than a scintilla of evidence to support the reasonable probability that it would have entered into business relationships with prospective clients, but for Ricky's Towing's actions. It points to the testimony of David Ferril, a representative of T-Miller. Ferril testified he reviewed the rotation logs and determined how many and what types of loads were not referred to T-Miller by Potter County due to Ricky's Towing's and Cantu Towing's both being on the rotation list. He answered affirmatively when asked whether T-Miller missed out on those tows because both Ricky's Towing and Cantu Towing were on the list.

Ferril testified that the purpose of the interrelated clause was "[t]o limit companies from just putting names on trucks and running as many names as they wanted to." Without the clause, some parties would have an unequal "piece of the pie." The record also shows that Ricky's Towing and Cantu Towing entered into contracts that contained the interrelated clause. The owners of those two companies, Ricky and Katrina Cantu, are now husband and wife. At the time the rotation log was utilized, the owners were in both a personal and professional relationship. Katrina Cantu testified she worked for Ricky's Towing before Ricky Cantu helped her establish Cantu Towing. Katrina said

6

some of the equipment she used was rented from another business owned by Ricky. Ricky's Towing and Cantu Towing were originally registered to the same address, but Cantu Towing changed its registered address to a post office box approximately one month prior to the effective date of its contract with Potter County.

This evidence, T-Miller contends, was sufficient to support its allegation that Ricky's Towing and Cantu Towing were intentionally attempting to circumvent the interrelated clause in the Potter County contracts for the purpose of obtaining a larger share of the dispatch referrals. This resulted in an intentional detrimental interference with the prospective business relationships of T-Miller.[4] We agree that the record supports T-Miller's assertions.

T-Miller also argues that it suffered actual harm as a result of the placement of both Ricky's Towing and Cantu Towing on the rotation log. Ferril testified he reviewed the rotation logs and determined how many and what type of loads for which T-Miller was not contacted because both Ricky's Towing and Cantu Towing were on the list. Ferril testified that from June 2012 through January 2013, the rotation log indicated T-Miller was dispatched on 123 tows from Potter County. For that same period of time, Ricky's Towing and Cantu Towing were dispatched on a combined total of 219 calls. This number was nearly double the calls received by T-Miller and nearly double the calls of other

---

[4] On appeal, Ricky's Towing points to Ferril's negative answer to the question, "[Ricky's Towing and Cantu Towing] never tried to interfere with one of your calls, did they? That's not what your complaint is?" Ricky's Towing argues that Ferril's negative answer shows that it did not interfere with T-Miller's business activities. We disagree. The very next question was, "Your complaint is [Ricky's Towing and Cantu Towing] answered a county call and that damaged you?" Ferril answered, "Yes, sir." The jury could have taken this evidence to support T-Miller's allegation that Ricky's Towing interfered with its prospective business relations, not by interfering in calls already given to T-Miller, but by intentionally increasing the chances that either Ricky's Towing or Cantu Towing would be dispatched to a call that rightfully should have been T-Miller's.

individual towing operators on the rotation log. Ferril stated, "Well, the way we looked at the contract with the interrelated clause, they were interrelated in our eyes and we felt like if they wouldn't have been in—if they wouldn't have been in the contract, that's where we would have gotten those tows." Ferril testified that based on his review of the log and his calculations, T-Miller's lost profits were around $15,000.[5] Thus, sufficient evidence was presented to support the actual harm element of the tortious interference with a prospective business claim as found by the jury.

Lastly, Ricky's Towing argues that any interference with T-Miller's prospective business relations was unintended and merely incidental and thus, cannot be the basis of a tortious interference with prospective business relations action.[6] One of the elements of this cause of action is proof of a "reasonable probability that the parties would enter into a contractual relationship." *Coinmach Corp.*, 417 S.W.3d at 923. Ferril testified that T-Miller, Ricky's Towing, and Cantu Towing each had contracts with Potter County. While Ferril testified that there were instances in which a given company might reject a particular call and that the value of different tows vary, he also testified that T-Miller lost a number of potential calls due to Ricky's Towing and Cantu Towing both being on the rotation list. Ferril provided information regarding his experience in the industry and his review of the rotation log and how he determined the estimated number of dispatch calls T-Miller would

---

[5] Ferril attempted to explain the amount of T-Miller's lost profits through several pages of testimony. During direct examination, he concluded T-Miller's lost profits were $24,420.50. Subsequent clarification resulted in a figure closer to $15,000, and in closing, counsel stated a figure of $15,918.00.

[6] In its appellate brief, Ricky's Towing argues that this court has already determined that its conduct was merely incidental. It quotes our 2017 opinion as stating, "Any benefit T-Miller derived by way of Potter County's contracts with [Ricky's Towing and Cantu Towing] was merely incidental." *T-Miller Wrecking Servs.*, 2017 Tex. App. LEXIS 3604, at *12-13. We cannot agree that this statement determined whether the conduct of Ricky's Towing was merely incidental. This statement spoke only to any benefit regarding third-party beneficiary status, not to whether the conduct was intentional or merely incidental with regard to the cause of action now before us.

have received, but for Ricky's Towing's and Cantu Towing's actions. The jury was free to believe none, some, or all of Ferril's testimony and conclude that Ricky's Towing intentionally interfered with the prospective relationships represented by those missed calls.

Furthermore, the record supports a finding that Ricky's Towing's interference was more than incidental. Both parties agree that interference is intentional "if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result." *Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001) (citing RESTATEMENT (SECOND) OF TORTS § 766B cmt. d (1979)). However, "if [the actor] had no desire to effectuate the interference by his action but knew that it would be a mere incidental result of conduct he was engaging in for another purpose, the interference may be found to be not improper." *Id.* (citation omitted). Here, Ferril testified that the contracts with Potter County were put in place to balance the "pie" and to "lower the number of towing companies on there where they could manage it and try to make it easier and better for everybody involved." He said his understanding of the inclusion of the interrelatedness clause in each contract was to "limit companies from just putting names on trucks and running as many names as they wanted to." Ferril indicated that the placement of both Ricky's Towing and Cantu Towing on the rotation list was motivated by, and resulted in, receiving a disproportionate piece of the pie. The jury could have reasonably concluded that Ricky's Towing's interference was more than incidental by believing that the reason both companies were placed on the rotation list was for the intentional purpose of receiving a disproportionate share of the dispatch calls to towing companies.

**CONCLUSION**

Based on our analysis of the record, we find the evidence presented was sufficient to support both the jury's verdict and the trial court's denial of the motion for judgment notwithstanding the verdict on the claim of tortious interference with prospective business relations. We thus affirm the judgment of the trial court.


Patrick A. Pirtle
Justice