

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00436-CV

_____

STEDFAST BAPTIST CHURCH, Appellant

V.

FELLOWSHIP OF THE SWORD, INC., Appellee

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-327677-21

Before Birdwell, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Seeking declaratory relief construing the default provisions of a commercial lease to exclude constitutionally protected religious speech, as well as an award of damages for breach of the lease by wrongful eviction, Stedfast Baptist Church sued Fellowship of the Sword, Inc., a Texas non-profit corporation operating as a Christian ministry in district court. Fellowship thereafter challenged the district court's jurisdiction in a plea arguing that because Fellowship had previously won its forcible detainer suit in justice court, the merits of the protected speech and breach of lease claims urged by Stedfast in the district court had already been determined adversely in the justice court, thereby depriving the district court of subject matter jurisdiction. The district court granted Fellowship's plea.

Stedfast appeals and raises the following two issues:

(1) Did the district court abuse its discretion in dismissing with prejudice claims of declaratory judgment and breach of contract because of a justice court judgment in a forcible entry and detainer suit?

(2) Did the district court abuse its discretion in dismissing with prejudice claims on the basis of lack of subject[ ]matter jurisdiction since a dismissal with prejudice is a merits determination that a court without jurisdiction has no power to make?

Because we hold that the justice court proceedings in Fellowship's forcible detainer suit[1] could not, as a matter of law, declare the rights of the parties under the

---

[1]Chapter 24 of the Texas Property Code is entitled, "Forcible Entry and Detainer." Tex. Prop. Code Ann. Ch. 24, §§ 24.001–.011. Chapter 24, however, distinguishes between a "forcible entry and detainer" and a "forcible detainer." *See id.*

commercial lease, including whether its default provisions contemplated a tenant's breach via its exercise of constitutionally protected religious speech, we sustain both of Stedfast's issues, reverse the district court's judgment, and remand this matter for proceedings consistent with this opinion.

## I. Background

### A. The Lease

In July of 2020, Stedfast, through its president and pastor Jonathan Shelley, executed a 63-month commercial lease with Fellowship, as one of several tenants in a multi-tenant commercial property on West Bedford–Euless Road in Hurst, Texas. The lease itself consisted of standard forms promulgated by the Texas Association of Realtors, Inc. and expressly acknowledged the leased premises would be used for religious purposes as a church, with contemplated hours of operation from 6:00 a.m. through 10:00 p.m., Sunday through Saturday. Beginning August 1, 2020, the term of the lease ended on October 31, 2025.

---

§§ 24.001 ("Forcible Entry and Detainer"), 24.002 ("Forcible Detainer"). Generally, a "forcible entry and detainer" entails someone who enters and possesses the premises without consent and who, after demand, refuses to surrender the premises to the lawful possessor. *See id.* § 24.001. And a "forcible detainer" involves someone who enters and possesses the premises with permission but who, after demand, refuses to surrender possession. *See id.* § 24.002.

## 1. Section 10(A)

Crucial to the dispute that eventually arose, Section 10(A) of the lease expressly prohibited the following activities on any part of the leased premises or the multi-tenant property generally:

A. Tenant may not use or permit any part of the leased premises or the Property to be used for:

(1) any activity which is a nuisance or is offensive, noisy, or dangerous;

(2) any activity that interferes with any other tenant's normal business operations or [Fellowship's] management of the Property;

(3) any activity that violates any applicable law, regulation, zoning ordinance, restrictive covenant, governmental order, owners' association rules, tenants' association rules, [Fellowship's] rules or regulations, or this lease;

(4) any hazardous activity that would require any insurance premium on the Property or leased premises to increase or that would void any such insurance;

(5) any activity that violates any applicable federal, state, or local law, including but not limited to those laws related to air quality, water quality, hazardous materials, wastewater, waste disposal, air emissions or other environmental matters; [or]

(6) the permanent or temporary storage of any hazardous material . . . .

## 2. Section 20(B)

Addressing what constitutes an actionable default by a tenant under the lease, Section 20(B) provided:

B. If [Fellowship] does not actually receive at the place designated for payment any rent due under this lease within 5 days after it is due, [Stedfast] will be in default. If [Stedfast] fails to comply with this

4

lease for any other reason within 10 days after [Fellowship] notifies [Stedfast] of its failure to comply, [Stedfast] will be in default.

### 3. Section 20(C)

In the event of a default by Stedfast, under Section 20(C), remedies available to Fellowship included (1) termination of the lease or (2) termination of Stedfast's right to occupy the leased premises without terminating the lease *and* acceleration of all rent payable during the remainder of the lease.

## B. The Dispute over the Lease

As alleged by Fellowship, the dispute over the lease arose because Shelley posted sermons online that Fellowship viewed as having advocated for violence against and celebrated the deaths of members of the gay community.[2] In response to

---

[2]Fellowship specifically alleged that mere days after a truck had accidentally driven through a gay pride parade in southern Florida and killed one person, Shelley made the following statements during one of his sermons, employing a pejorative term for members of the gay community:

> It's great when trucks accidentally go through those parades. I think only one person died so hopefully we can hope for more in the future. You say, "[W]ell that's mean." Yeah, but the Bible says they're worthy of death. You say, "[A]re you [sad] when f*gs . . . die?" No, I think it's great. I hope they all die. I would love it if every f*g . . . would die right now. And you say, "[W]ell I don't think that's what you really mean." That's exactly what I mean. I really mean it.

Shelley also allegedly urged that to save America, members of the gay community should be shot and killed:

> I mean 95% of America thinks that the most disgusting thing imaginable is being a f*gg*t . . . . Because it is. I don't even have to convince people. And then you have to think about it – why in the

5

the sermons Shelley posted on social media, in June 2021, protesters appeared across from the leased premises. Not long after the protests started, on July 1, 2021, Fellowship sent Stedfast a "Notice of Default of Commercial Lease" addressed to Shelley, stating:

> You have violated certain terms of the Lease and accordingly, this is your notice of default.

---

> world would every single company and our government and the media and just all the social media be constantly saying like let's support the most gross and disgusting thing ever[.] Because f*gs . . . are in control of the media, because f*gs . . . are in control of the government, because f*gs . . . are in control of these businesses because they love money, they love power, they love influence, and they're a bully. And you know what, they're bullying all these companies and they're bullying our country and they're bullying our leaders and they're doing what? They're doing their bidding for them. And you know the right thing to do to a bully is to put a bullet in his head. It's not to back down, it's not to apologize, it's to put a bullet in his head. And you want to save America? Start there.

We do not quote any of this language gratuitously, but simply to demonstrate the potential constitutional gravity of the issues presented by this dispute that may eventually require adjudication. *See Snyder v. Phelps*, 562 U.S. 443, 447–48, 460–61, 131 S. Ct. 1207, 1213, 1220–21 (2011) (holding that the First Amendment shielded members of the Westboro Baptist Church in Topeka, Kansas, from tort liability to a grieving military family for publicly expressing their view that the United States is overly tolerant of the gay community, and particularly of gay service members, and that God kills American soldiers as punishment, through picketing the funeral services of the family's departed loved one in Maryland employing similarly pejorative language). Although *Snyder* may ultimately inform a decision on the merits of this dispute, the language allegedly employed in Shelley's sermons implicates the jurisdictional question before us only to the extent we consider below whether, as urged by Fellowship, the forcible detainer proceeding in justice court finally adjudicated Stedfast's First Amendment defense to eviction from the leased premises.

6

It has come to [Fellowship's] attention that as the pastor and President of [Stedfast], your words and behavior have incited violence against certain members of our society, and that those publicized, inciteful words and behavior have caused violent protests to occur on the Property, endangering both the Property and the other tenants. Accordingly, you have violated Section 10.A of the Lease:

1. Your violent, inciting words and behavior, stated while speaking to the Stedfast Baptist Church congregation and then later posted for the general public to witness on YouTube, are a nuisance, offensive and dangerous to the other tenants and to the public at large;

2. Your actions have endangered other tenants and caused interference with their normal business operations, prohibiting them from the quiet enjoyment of their own suites; and

3. You have invited hazardous activity onto the Property that would be a detriment to [Fellowship's] insurance policy and continued hazardous activity would cause such policy to either increase in price or be terminated.

Therefore, you have 10 calendar days from the date of this letter to remedy this default and comply with the terms of the Lease. If you choose to remain in default after the expiration of 10 calendar days, [Fellowship] will exercise its rights under the terms of the Lease to terminate the lease and/or [Stedfast's] right to occupy the Property.

Due to the nature of your default, there are multiple options that may be used to rectify the default. It is [Fellowship's] desire to explore these options to determine which, if any, are in the best interest of both parties. Please contact me as soon as possible so that we may discuss the actions that would be necessary to cure your default. I look forward to speaking with you.

Fellowship also asserted that other tenants had complained about both the sermons and the protestors.

About six weeks later, on August 13, 2021, Fellowship sent Stedfast a "Notice to Vacate and Notice of Intent to Accelerate Rent" addressed to Shelley, stating:

> Notice is hereby given and demand is hereby made that you vacate the premises . . . within three (3) days of the delivery of this letter to the Premises. Fellowship of the Sword has elected to terminate the lease between you and Fellowship of the Sword because of one or more violations of Paragraph 10 of the lease.

> If you do not vacate the Premises within three (3) days after receipt of this letter, we will institute a forcible detainer suit against you three (3) days from the date of this notice and demand is delivered to the Premises, in which we will seek all relief and damages to which [Fellowship] is entitled under Paragraph 20 of the lease, including, but not limited to, attorneys' fees, costs, expenses, pre- and post-judgment interest, rents payable during the remainder of the lease, and any and all other relief to which our client is entitled under Paragraph 20 of the lease.

> Further, notice is hereby given that we intend to accelerate all rents which are payable during the remainder of the lease, as allowed by Paragraph 20 of the lease. We reserve the right to seek all accelerated rents payable during the remainder of the lease.

In response to these notices, Stedfast refused to vacate the leased premises on the grounds that (1) the default provisions of the lease did not authorize eviction predicated upon the conduct of the protesting third parties and (2) the messages and sermons posted on social media did not breach any obligation of the lease. Stedfast also maintained that because the protests did not occur during the business hours of the other commercial tenants but solely during the church service hours, the messages and sermons posted on social media did not interfere with the businesses of other tenants as alleged by Fellowship.

8

## C. Concurrent Lawsuits

On August 20, 2021, the parties sued each other. But they sued each other in different courts.

### 1. Stedfast and the District Court

Stedfast filed a lawsuit in district court seeking a declaratory judgment that it had not breached the lease and injunctive relief prohibiting Fellowship from evicting it from the leased premises. Stedfast also sought "monetary relief of $250,000.00 or less" for breach of lease. Fellowship filed a general denial on September 13, 2021. On October 5, 2021, Stedfast filed its first amended petition in which it continued to seek declaratory relief, injunctive relief, and "monetary relief of $250,000.00 or less" for breach of lease.

### 2. Fellowship and the Justice Court

In contrast, Fellowship filed a petition for forcible detainer in justice court, asserting a superior right of possession in the leased premises and seeking Stedfast's eviction therefrom. After a jury trial, the justice court rendered a judgment on October 22, 2021, awarding Fellowship possession of the leased premises. Stedfast did not appeal the judgment to the county court at law.

## D. District Court Activity after Completion of the Justice Court Proceedings

On November 4, 2021, shortly after the entry of the judgment of possession by the justice court, Stedfast filed its second amended petition in the district court

seeking declaratory judgment, injunctive relief against eviction, and "monetary relief of $250.000.00 or less" for breach of lease.

On the same date, Fellowship filed a plea to the jurisdiction in which it asked the district court to dismiss Stedfast's suit with prejudice. Fellowship argued that the justice court had already determined the possession issue in its favor, that the justice court alone had exclusive jurisdiction to determine possession of the leased premises, and that the district court could not enjoin the justice court's judgment, citing *McGlothlin v. Kliebert*, 672 S.W.2d 231, 232 (Tex. 1984) (denying availability of injunctive relief against justice court in mere landlord–tenant dispute over possession of leased premises). The hearing on Fellowship's plea to the jurisdiction was set for November 23, 2021.

Before the hearing on Fellowship's plea to the jurisdiction, on November 15, 2021, Stedfast filed its third amended petition in the district court retaining its claims for declaratory judgment and "monetary relief of $250.000.00 or less" for breach of lease. Stedfast withdrew its request for injunctive relief, however, effectively nonsuiting that portion of its claims. *See Rodarte v. Investeco Grp., L.L.C.*, 299 S.W.3d 400, 408 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

More specifically, Stedfast alleged:

10

Both [Stedfast] and [Fellowship] have an interest in the proper interpretation of the lease that affects their legal rights respectively.

## Suit for Declaratory Relief

**14.**

The language of Section 10 A of the lease is not ambiguous.

**15.**

While is it is undisputed that a Justice Court has exclusive jurisdiction over a forcible detainer suit, a Justice Court does not have jurisdiction to give declaratory relief to interpret the lease because it is not a court of record required by Section 37.003(a) of the Texas Civil Practice & Remedies Code, according to *McGloth*[*l*]*in v. Kliebert*, 672 S.W.2d 231, 233[] (Tex. 1984).

**16.**

[Stedfast] avers a reasonable interpretation of Section 10 A cannot include third-party protesters responding to sermons and messages appearing on any electronic platform because such information is not a use of property nor does it violate any provision of the section.

**17.**

Additionally, the conduct of third-party protesters on the property across from the leased premises who have allegedly viewed sermons or messages on these electronic platforms is constitutionally protected by the free speech and religion clauses of the United States and Texas Constitutions thereby cannot be declared to violate Section 10 A of the lease.

**18.**

Therefore, there is no reasonable interpretation of Section 10 A of the le[a]se that would authorize [Fellowship] to declare a default under Section 20 of the lease to evict [Stedfast] and authorize acceleration of the lease payments.

## Breach of Contract

### 19.

[Fellowship's] efforts to evict [Stedfast] are a breach of contract entitling [Stedfast] to recover all damages it has sustained as a result of [Fellowship's] conduct.

Responding to Stedfast's newly amended pleading, on December 2, 2021, Fellowship filed its first amended answer in which it pleaded a general denial and asserted four affirmative defenses with specific application to Stedfast's breach of lease cause of action:

2.2 The claims asserted by [Stedfast] are barred or fail, in whole and/or in part, due to res judicata.

2.3 The claims asserted by [Stedfast] are barred or fail, in whole and/or in part, due to collateral estoppel.

2.4 The claims asserted by [Stedfast] are barred or fail, in whole and/or in part, due to [Stedfast's] prior material breach.

2.5 The claims asserted by [Stedfast] are barred or fail, in whole and/or in part, because any purported breaches of contract by [Fellowship] are excused.

Although the record is not clear whether Fellowship filed its amended answer before or after the hearing on its plea to the jurisdiction, the district court signed an order granting its plea and dismissing Stedfast's claims with prejudice on December 6, 2021.

Shortly thereafter, Stedfast filed this appeal, and later still, it vacated the leased premises.

## II. Discussion

### A. Standard of Review

Resolution of a plea to the jurisdiction may be on the pleadings or an evidentiary record, depending on whether the plea challenges the pleadings, the existence of jurisdictional facts, or both. *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020). If a plea challenges the pleadings, we determine whether the pleaders allege facts that affirmatively demonstrate the court's jurisdiction to adjudicate the cause. *Id.* In so doing, we liberally construe the pleadings, taking all assertions of fact as true and looking to the intent of the pleader. *Id.* "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff[] should be afforded the opportunity to amend." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff[] an opportunity to amend." *Id.* at 227.

If, on the other hand, the plea goes beyond the pleadings and the parties offer evidence to establish or negate jurisdictional facts, we utilize a process that mirrors a traditional motion for summary judgment:

> Initially, the defendant carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction. If it does, the plaintiff is then required to show that a

13

> disputed material fact exists regarding the jurisdictional issue. If a fact issue exists, the trial court should deny the plea. But if the relevant evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law.

*Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (footnotes omitted). "In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018). "We address the question of whether there is jurisdiction on a claim-by-claim basis." *Tex. Dep't of Transp. v. Self*, No. 02-21-00240-CV, 2022 WL 1259094, at *6 (Tex. App.—Fort Worth Apr. 28, 2022, pet. filed) (mem. op. on reh'g).

Since Fellowship challenged the district court's jurisdiction based upon the judgment of possession it obtained in the justice court, and Stedfast responded by denying the jurisdiction of the justice court to adjudicate the claims it asserts in the district court, we must look to the jurisdictional restrictions of forcible detainer actions in justice court.

## B. The Scope of Forcible Detainer Jurisdiction

Section 24.002 of the Texas Property Code defines a forcible detainer in the following manner:

14

# § 24.002. Forcible Detainer

(a) A person who refuses to surrender possession of real property on demand commits a forcible detainer if the person:

> (1) is a tenant or a subtenant wil[l]fully and without force holding over after the termination of the tenant's right of possession;

> (2) is a tenant at will or by sufferance, including an occupant at the time of foreclosure of a lien superior to the tenant's lease; or

> (3) is a tenant of a person who acquired possession by forcible entry.

(b) The demand for possession must be made in writing by a person entitled to possession of the property and must comply with the requirements for notice to vacate under Section 24.005.

Tex. Prop. Code Ann. § 24.002. As indicated by using the term "tenant" to describe the person in unlawful possession of real property, the parties in a forcible detainer action are usually in a landlord–tenant relationship. *See Ward v. Malone*, 115 S.W.3d 267, 270 (Tex. App.—Corpus Christi–Edinburg 2003, pet. denied).

To obtain the removal or eviction of a tenant in possession by forcible detainer, the party seeking eviction must file an action in a justice court in the precinct in which the real property is located and, if prevailing, the justice court has exclusive jurisdiction to enter a judgment of possession and to issue a writ of possession in execution thereof. Tex. Prop. Code Ann. §§ 24.004(a), .0061(a). The justice court's jurisdiction extends to the recovery of unpaid rent from the tenant in addition to the writ of possession. *See id.* at § 24.0051(b). An appeal of a judgment of

possession (and any award of unpaid rent) takes the form of a trial de novo in county court. *See* Tex. R. Civ. P. 510.10(c).

A forcible detainer action is a proceeding specially designed to be a speedy, simple, and inexpensive means to obtain immediate possession of property.[3] *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 919 (Tex. 2013); *Marshall v. Hous. Auth. of San Antonio*, 198 S.W.3d 782, 787 (Tex. 2006); *Fed. Home Loan Mortg. Corp. v. Pham*, 449 S.W.3d 230, 235 (Tex. App.—Houston [14th Dist.]

---

[3]In an antebellum opinion, the Texas Supreme Court explained the policy underlying the streamlined proceedings employed to adjudicate possession disputes in forcible entry and detainer and forcible detainer actions, thusly:

> But in an action for a forcible entry and detainer, the reason and the policy of the law show most clearly that the trial should be strictly confined to the right of possession, without regard to which party had the title to the land. If one holding title to the land was permitted, by himself or his agent, with force and arms, to dispossess one in the peaceable possession, the consequence would be breaches of the peace, oppression and bloodshed, and trial by the use of the bowie knife and the revolver would be resorted to instead of the quiet and peaceable remedy afforded by the due course of law in the judicial tribunals of the country.
>
> The act of the legislature we have been discussing was designed to give a summary and peaceable remedy for the violation of every one's possession, without stopping to inquire which party had the title to the land. It declares to the party claiming title, [“]Your title may be good; the courts of the country are open to you to try your title and obtain possession if you have the title; but you shall not be permitted to take the remedy in your own hands, and by violence turn out one who has the peaceable possession; if you do you will be compelled to restore the possession and pursue the due course of the law.[”]

*Warren v. Kelly*, 17 Tex. 544, 551 (1856).

16

2014, no pet.). "To prevail in a forcible detainer action, a plaintiff is not required to prove title but is only required to show sufficient evidence of ownership to demonstrate a superior right to immediate possession." *Villalon v. Bank One*, 176 S.W.3d 66, 70 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (citing *Rice v. Pinney*, 51 S.W.3d 705, 709 (Tex. App.—Dallas 2001, no pet.)); *Dormady v. Dinero Land & Cattle Co., L.C.*, 61 S.W.3d 555, 557 (Tex. App.—San Antonio 2001, pet. dism'd w.o.j.) (op. on reh'g); *Goggins v. Leo*, 849 S.W.2d 373, 377 (Tex. App.—Houston [14th Dist.] 1993, no writ).

Moreover, "a forcible-detainer suit in justice court may run concurrently with another action in another court—even if the other action adjudicates matters that could result in a different determination of possession from that rendered in the forcible-detainer suit." *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 437 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (op. on reh'g). "Matters relating to possession may overlap in the two proceedings because 'a judgment of possession in a forcible detainer action [determines] only . . . the right to *immediate possession* and does not determine the [parties'] *ultimate* rights . . . to *any* other issue in controversy relating to the realty in question.'" *Id.* (quoting *Lopez v. Sulak*, 76 S.W.3d 597, 605 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) (emphasis added by *Hong Kong Dev., Inc.*)).

Even when this overlap exists, however, courts have consistently recognized that a judgment of possession in a forcible detainer action determines only the right

17

to immediate possession and not the parties' ultimate rights regarding any other issue in controversy relating to the property in question. *Fed. Home Loan Mortg. Corp.*, 449 S.W.3d at 235. As such, no issue in a forcible detainer action other than the right of immediate possession has preclusive effect in a subsequent suit between the parties. *See Coinmach*, 417 S.W.3d at 919; *Fed. Home Loan Mortg. Corp.*, 449 S.W.3d at 235.

In *Gibson v. Dynergy Midstream Services, L.P.*, we highlighted this jurisdictional restriction when considering a plea to the jurisdiction filed in a justice court:

> To prevail in a forcible entry and detainer or forcible detainer proceeding, the plaintiff must present sufficient evidence of ownership to demonstrate a superior right to immediate possession. The only issue that can be litigated in such suits is the right to actual possession; the right to title cannot be adjudicated. Justice courts may adjudicate possession when issues related to the title of real property are tangentially or collaterally related to possession. If, however, the question of title is so integrally linked to the issue of possession that the right to possession cannot be determined without first determining title, then the justice courts and, on appeal, the county courts, lack jurisdiction over the matter.

138 S.W.3d 518, 522–23 (Tex. App.—Fort Worth 2004, no pet.) (citations omitted).

Critically, we also noted an appellate limitation that, upon reflection, counsels against the capacity of justice courts to fully and finally adjudicate the constitutional rights of the parties, particularly when considering a forcible detainer action predicated upon a commercial lease. Simply put, when considering who possesses the superior right of possession under a commercial lease, there is ultimately no right of appellate review, in the traditional sense, from a justice court's judgment of possession, even if affirmed by trial de novo in the county court. *See id.* at 521 ("A

18

final judgment of a county court in an eviction suit may not be appealed on the issue of possession unless the premises in question are being used for residential purposes only." (quoting Tex. Prop. Code Ann. § 24.007)); *see also* Tex. Const. art. V, §§ 3(a) (providing that constitutional grant of appellate jurisdiction for Texas Supreme Court is restricted as prescribed by law), 6(a) (same for intermediate appellate courts). Stated differently, if the constitutional rights of one or more parties to a commercial lease inform the right to possession to be adjudicated by forcible detainer, Section 24.007 of the Property Code appears to foreclose appeal to this or the supreme court for their repudiation or vindication. *See Gibson*, 138 S.W.3d at 520–21.

## C. The Judgment of Possession and Stedfast's Third Amended Petition

When the jury in the justice court determined—whether correctly or incorrectly—that Fellowship had terminated Stedfast's lease, Stedfast became a "tenant at sufferance." *See Coinmach* 417 S.W.3d at 915–16; *Bockelmann v. Marynick*, 788 S.W.2d 569, 571 (Tex. 1990). "A tenancy at sufferance is a lesser possessory estate." *ICM Mortg. Corp. v. Jacob*, 902 S.W.2d 527, 530 (Tex. App.—El Paso 1994, writ denied). Fellowship was thus adjudicated by the justice court to have the superior right to possession, and thereafter entered a final judgment of possession in Fellowship's favor.

Nevertheless, the judgment of possession did not preclude Stedfast from asserting that it had been wrongfully evicted in a collateral action in district court. *See Coinmach*, 417 S.W.3d at 920; *Fed. Home Loan Mortg. Corp.*, 449 S.W.3d at 235; *see also*

*Permison v. Morris*, No. 01-18-00392-CV, 2019 WL 5556576, at *7 n.9 (Tex. App.—Houston [1st Dist.] Oct. 29, 2019, no pet.) (mem. op.); *Bankr. Est. of Wilson v. Petty*, No. 05-06-01502-CV, 2008 WL 2068063, at *4 (Tex. App.—Dallas May 16, 2008, no pet.) (mem. op.). Conversely, had the jury in the justice court determined—whether correctly or incorrectly—that Stedfast had not breached the lease and was entitled to possession, a judgment awarding possession to Stedfast would not have precluded Fellowship from bringing a collateral "suit for trespass, damages, waste, rent, or mesne profits." *See* Tex. Prop. Code Ann. § 24.008; *Coinmach*, 417 S.W.3d at 919; *Fed. Home Loan Mortg. Corp.*, 449 S.W.3d at 235; *Bankr. Est. of Wilson*, 2008 WL 2068063, at *4. The only issue to be determined by the justice court was the right of immediate possession, nothing more.

In its plea to the jurisdiction, Fellowship argued to the district court that the only issue presented by Stedfast's pleadings was whether it was entitled to possession of the leased premises, which, according to Fellowship, was the issue exclusively resolved by the justice court, thereby depriving the district court of subject matter jurisdiction. Stedfast lent some credence to this argument by seeking injunctive relief from the district court against Fellowship's justice court eviction efforts in its original, first amended, and second amended petitions. In each instance, the underlying basis for the injunctive relief sought was that Stedfast retained a superior right to possession under its commercial lease, the very issue subject to the justice court's exclusive jurisdiction. Ultimately, however, Stedfast withdrew its claim for

20

injunctive relief when the justice court entered the judgment of possession in favor of Fellowship. *See McGlothlin*, 672 S.W.2d at 232 (denying availability of district court injunctive relief against justice court when adjudication of right of possession overlaps). Accordingly, when the district court considered Fellowship's plea, the only claims remaining were those for declaratory relief and breach of lease, neither of which were subject to adjudication in the forcible detainer action.

Stedfast's response to Fellowship's plea in the district court made this exact point. And before this court, Stedfast similarly argues: "[Stedfast] amended its pleading following the motion to dismiss removing all allegations and claims objected to in the plea to the jurisdiction." Given we are to consider Fellowship's plea on a claim-by-claim basis, *see Self*, 2022 WL 1259094, at *6, when Stedfast filed its third amended petition dropping its request for injunctive relief, the entire foundation to Fellowship's plea completely vanished.

Nevertheless, Fellowship argues that principles of res judicata and collateral estoppel support the district court's dismissal of the remaining claims for declaratory relief and breach of lease. This contention we reject.

**D. Fellowship's Plea, Res Judicata, and Collateral Estoppel**

After reviewing Fellowship's plea to the jurisdiction, we conclude that it was not based on principles of res judicata and collateral estoppel. We acknowledge that Fellowship had some arguments that sounded a great deal like res judicata and collateral estoppel. For example, Fellowship asserted, "At the jury trial [in the justice

court], [Stedfast] was able to put on evidence and argue all its defense[s] to [Fellowship's] forcible detainer suit, including that [Stedfast] had not breached the Lease under the terms of the Lease." Elsewhere, Fellowship argued, "[A]ll of the arguments or defenses that [Stedfast] has raised in the Petition have already been asserted in the Justice Court. Furthermore, [Stedfast] has not pleaded that it was prevented from arguing or putting forward evidence of its defenses at the justice court trial." Those assertions, though, were not in support of res judicata or collateral estoppel but were in support of Fellowship's argument that the district court could not enjoin the justice court because Stedfast could not meet the requirements to obtain injunctive relief imposed by the supreme court in *McGlothlin*:

> For the district court to enjoin the exercise of the justice court's exclusive jurisdiction in a forcible entry and detainer case, there must be a showing that the justice court is without jurisdiction to proceed in the cause or the defendant has no adequate remedy at law. There is no showing that the justice court would be without jurisdiction in this case. This suit is merely a landlord–tenant dispute over possession of the leased premises. Kliebert concedes that title to the premises is not an issue. Therefore, the only way Kliebert could entitle himself to relief in the district court is to show facts that existed which prevented Kliebert from making his defense at law in the justice court. *Smith v. Ryan*, 20 Tex. 661, 665 (1858).

> A temporary injunction will not be granted where there is a plain and adequate remedy at law. . . . Kliebert's adequate remedy at law is to defend himself in the justice court suit. The justice court can construe the lease and hear Kliebert's arguments to determine who had the right of possession. *Gibson v. Moore*, 22 Tex. 611 (1858). Therefore, the district court erred in granting the temporary injunction because Kliebert had an adequate remedy at law . . . .

672 S.W.2d at 232–33.

Indeed, we would not expect res judicata and collateral estoppel to appear in a plea to the jurisdiction. Those arguments would not deprive the district court of jurisdiction. They might, however, provide the district court with bases to deny Stedfast's claims on their merits. *See, e.g., Harrell, Tr. of Sam Minchen Revocable Living Tr. v. Stovall*, No. 14-18-00991-CV, 2020 WL 1922014, at \*9 (Tex. App.—Houston [14th Dist.] Apr. 21, 2020, no pet.) (mem. op.) (affirming trial court judgment based on res judicata).

**E. Fellowship's First Amended Answer and the Dismissal Order**

Res judicata and collateral estoppel first appeared in Fellowship's first amended answer, which Fellowship filed after its plea to the jurisdiction but before the district court signed its dismissal order. The district court's later dismissal order makes no mention of either res judicata or collateral estoppel.

The purpose of a plea to the jurisdiction is to defeat a cause of action without regard to the asserted claim's merits. *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 453 (Tex. 2016). Normally, a court without subject matter jurisdiction has the power to dismiss the suit, nothing more. *See Lopez v. Pub. Util. Comm'n of Tex.*, 816 S.W.2d 776, 783–84 (Tex. App.—Austin 1991, writ denied) ("Having adjudged that it had no jurisdiction over the plaintiffs' claims, the district court could not contemporaneously order that they take nothing thereby."). "Without subject matter jurisdiction, a court is powerless to render judgment on the merits of a lawsuit." *Ab-Tex Beverage Corp. v. Angelo State Univ.*, 96 S.W.3d 683, 686

(Tex. App.—Austin 2003, no pet.). Thus, to dismiss Stedfast's claims with prejudice, which the district court did, it would have had to assert jurisdiction over them. *See Ritchey v. Vasquez*, 986 S.W.2d 611, 612 (Tex. 1999) (stating that a dismissal with prejudice functions as a final determination on the merits); *Ab-Tex Beverage Corp.*, 96 S.W.3d at 686. Although Fellowship's plea to the jurisdiction did not provide grounds for a disposition on the merits, its first amended answer potentially did. *See, e.g.*, *Harrell*, 2020 WL 1922014, at *9.

In short, the district court appears to have disposed of the merits while simultaneously asserting that it had no jurisdiction over them. Contextually, res judicata and collateral estoppel appear to explain how the district court reached that result. As noted earlier, Fellowship's plea to the jurisdiction had arguments that resembled those presented when arguing res judicata and collateral estoppel:

- "At the jury trial [in the justice court], [Stedfast] was able to put on evidence and argue all its defense[s] to [Fellowship's] forcible detainer suit, including that [Stedfast] had not breached the Lease under the terms of the Lease."

- "[A]ll of the arguments or defenses that [Stedfast] has raised in the Petition have already been asserted in the Justice Court. Furthermore, [Stedfast] has not pleaded that it was prevented from arguing or putting forward evidence of its defenses at the justice court trial."

But as also noted earlier, those arguments had nothing to do with res judicata and collateral estoppel; rather, they supported Fellowship's argument that, based on the *McGlothlin* analysis, the district court should not grant Stedfast injunctive relief. Fellowship's first amended answer might have reinforced the idea that its plea to the

24

jurisdiction encompassed res judicata and collateral estoppel, but such was not the case.

**F. Stedfast's Arguments**

Stedfast argues that its claims for declaratory judgment and breach of contract "are undisputedly within the jurisdiction of a district court and not within the jurisdiction of a justice court." Stedfast also argues that "the justice court judgment could not legally serve as a basis for dismissal of all of the district court claims based on *res judicata* or a collateral estoppel of the justice court judgment." We agree with both contentions.

Stedfast further argues that a forcible detainer action, by its very function, does not encompass the scope of any underlying dispute:

> [Fellowship's] argument in the plea to the jurisdiction that the justice court judgment deprived the district court of jurisdiction is defeated by several Texas Supreme Court opinions involving suits for wrongful eviction. [*Marshall*, 198 S.W.3d at 787; *Coinmach*, 417 S.W.3d at 919.] As that court writes in *Marshall*, "[j]udgment of possession in a forcible detainer action **is not intended to be a final determination of whether the eviction is wrongful**, rather it is a determination of the right to immediate possession." [*Marshall*, 198 S.W.3d at 787.] Or as written in *Coinmach*, the "judgment in a forcible detainer action is a final determination **only** 'of the right to immediate possession[';] it is not 'a final determination of whether the eviction is wrongful.'" [*Coinmach*, 417 S.W.3d at 919.]

Because of the jurisdictional limitations placed upon forcible detainer actions in justice court, we agree that even if the justice court heard evidence relevant to Stedfast's claims for declaratory relief and breach of lease, the justice court's

consideration of such evidence had no claim or issue preclusive consequences on the subject matter jurisdiction of the district court.

## 1. Justice Courts and Declaratory Judgments

Stedfast explains that "while a justice court has exclusive jurisdiction over forcible entry and detainer suits, it is equally undisputed that because it is not a court of record it cannot entertain a declaratory judgment suit, which is required by Section 37.003(a) of the Texas Civil Practice & Remedies Code." Stedfast is correct. Suits seeking declaratory judgment must be filed in a court of record. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a) ("A court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."); *Healthelp Servs. Grp., Inc. v. Iskcon Asset Mgmt.*, No. 14-97-01300-CV, 1999 WL 459770, at *2 (Tex. App.—Houston [14th Dist.] July 8, 1999, pet. dism'd w.o.j.); *Wilson v. Wilson*, 378 S.W.2d 156, 160 (Tex. App.—Tyler 1964, no writ) (op. on reh'g); *but see Nash v. Peters*, 303 S.W.3d 359, 361–62 (Tex. App.—El Paso 2009, no pet.) (holding that Section 27.034 of the Texas Government Code, which dealt with restrictive covenants, trumped Section 37.003(a) of the Texas Civil Practice and Remedies Code because Section 27.034 was the more specific statute and because Section 37.003(a) was the general rule).

A justice court is not a court of record. *See Warren v. Barron Bros. Millinery Co.*, 23 S.W.2d 686, 687 (Tex. [Comm'n Op.] 1930) ("Justices' courts are not courts of record; they have no seal to authenticate their process."); *Bumpus v. Fisher*, 21 Tex.

561, 567 (1858) ("The justices' court has no seal, and, therefore, in some respects, in relation to the authentication of its records, it cannot be put on a footing with courts of record."). As explained by our sister court in Waco:

> Due to the fact that justice courts are often presided over by laymen who are not supposed to be skilled in the technicalities of the science of the practice of law nor well informed in the forms of judicial proceedings as observed in courts of records, great liberality and indulgence are extended to the proceedings in such courts. It is said that if their proceedings are intelligible and attain the ends of substantial justice, they are generally sustained. The test of the validity of the judgments of such courts is their intelligibility, and in pursuance of the indulgence accorded by the policy of the higher courts, very brief entries have been held sufficient to sustain their judgments. If this were not true, the parties might often experience great difficulty in getting out of the justice court so as to secure a trial in a court of record.

*Dagley v. Leeth*, 106 S.W.2d 730, 731 (Tex. App.—Waco 1937, no writ) (citations omitted) (citing *Clay v. Clay*, 7 Tex. 250, 255 (1851) ("But great liberality and indulgence are extended to the proceedings of justices of the peace, who are supposed not to be skilled in the forms of judicial proceedings observed in courts of record. If their proceedings are intelligible, and attain the ends of substantial justice, they are generally sustained.")); *see also Dixon v. Bank of New York Mellon*, 507 S.W.3d 783, 788 (Tex. App.—El Paso 2015, no pet.) ("At the outset, Justice Courts are not courts of record such that we would know what documents were or were not before the court."); *In re McCue*, No. 06-09-00044-CV, 2009 WL 1227900, at *2 (Tex. App.—Texarkana May 7, 2009, orig. proceeding) (mem. op) ("Given that justice courts are not courts of record and that the Legislature has not required justice courts

to permit the transcription of proceedings therein when requested by a party (even if transcribed at the party's own expense), we cannot conclude the district court abused its discretion by denying McCue's petition for writ of mandamus against the justice court."); *Hutcherson v. Blewett*, 58 S.W. 150, 151 (Tex. App.—Fort Worth 1900, no writ) ("As the justice court is not a court of record, we are at a loss to determine how he could have shown that he had made proof of his inability to pay the costs before the court trying the case, without showing by parol that the court was still in session when the affidavit was made before and filed with the justice of the peace."). The justice court therefore had no jurisdiction over Stedfast's declaratory judgment action. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a); *Healthelp Servs. Grp.*, 1999 WL 459770, at *2. And "a claim is not barred by res judicata if the court rendering judgment in the initial suit lacked subject[ ]matter jurisdiction over the claim." *Lopez*, 76 S.W.3d at 606; *see Bacon v. Jordan*, 763 S.W.2d 395, 396 (Tex. 1988).

Neither Stedfast nor Fellowship disputes that the district court was a court of record. *See Dorsey v. Cutbirth*, 178 S.W.2d 749, 750 (Tex. App.—Galveston 1944, writ ref'd w.o.m.) ("In this connection we desire to state that the district court is a court of record, and speaks only by record."). Thus, the law did not preclude the district court from proceeding on Stedfast's declaratory judgment action for that reason.

### 2. Justice Courts and the Amount in Controversy

Justice courts are also limited to "civil matters . . . in which the amount in controversy is not more than $20,000, exclusive of interest." Tex. Gov't Code Ann.

§ 27.031(a)(1). Stedfast pled an amount in controversy in excess of $20,000. Thus, the justice court had no jurisdiction over Stedfast's breach of contract claim. Because the justice court had no jurisdiction over Stedfast's breach of contract claim, res judicata did not bar Stedfast from asserting that claim in the district court. *See Lopez*, 76 S.W.3d at 606; *see also Bacon*, 763 S.W.2d at 396.[4]

District courts have jurisdiction of civil matters "in which the amount in controversy is more than $500, exclusive of interest." Tex. Gov't Code Ann. § 24.007(b). Unlike the justice court, the amount in controversy was not an impediment to the district court's jurisdiction.

## G. Holding

Without addressing the merits of Stedfast's claims for declaratory relief and breach of lease, we hold that the district court had subject matter jurisdiction over them; thus, the district court erred by dismissing those claims with prejudice. We

---

[4]Although we are unable to find any authority granting courts of record exclusive jurisdiction to adjudicate the constitutional rights of parties, as observed above, the absence of a record—particularly by transcription of testimony—in a justice court, coupled with the absence of intermediate appellate and supreme court review under these unique circumstances, counsels against the capacity of justice courts to adjudicate the constitutional rights of the parties before it. *See Gibson*, 138 S.W.3d at 521. Here, given the assertion of free speech and free exercise rights by Stedfast in opposition to Fellowship's interpretation of the default provisions in the commercial lease, it would be difficult to credit claim and issue preclusion arguments predicated upon the forcible detainer proceedings in the justice court. *See also Freedom From Religion Found., Inc. v. Mack*, No. 21-20279, 2022 WL 4546111, at *1–5, *17 (observing that Texas justice courts are not courts of record, reversing summary judgment granted in plaintiffs' favor that was based upon affidavits recounting how justice court proceedings allegedly violated the Establishment Clause, and rendering judgment dismissing the plaintiffs' suit) (5th Cir. Sept. 29, 2022).

further hold that the justice court proceedings triggered neither collateral estoppel nor res judicata principles that defeated Stedfast's district court claims, so to the extent that the district court assumed jurisdiction and disposed of Stedfast's claims with prejudice because they had previously been litigated in the justice court, the district court also erred. We sustain both of Stedfast's issues.

### III. Conclusion

Having sustained both of Stedfast's issues, we reverse the trial court's judgment and remand this matter to the trial court for proceedings consistent with this opinion.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: